Parker, C. J.,
observed that, the Court being divided in opinion m this case, he should deliver that, in which Thatcher and Wilde, Justices, concurred with him. The action is assumpsit upon a promissory note against the maker; and the defence to the action is that the note was given for a usurious consideration, and is void. The action is brought by persons claiming to be, and who must from the evidence be taken to be, innocent endorsees, who have purchased the note bona fide, and for a valuable consideration. This character, however, will not avail them, if the note is evidence of a contract originally usurious, or if it was security for a loan of money, upon which more than six per cent, had been reserved or taken. To this point no authorities need be cited, for, since the great struggle to protect contracts so situated from the effects of the statute of usury, in the case of Lowe & Al. vs. Waller, no attempt has been made, with any seriousness, to give validity to such notes for the benefit of endorsees.
The only question, then, is, whether this note, when made, was made upon a usurious consideration. To determine this, we must look ,t.o the facts reported. These show that this note was procured by Blanchard & Ford, on an agreement with Eaton to obtain such a note, and deliver it to him, in order that they might have a longer *94 credit for a sum of money claimed by him to be due on a note in nis possession, of which Blanchard &f Ford were the makers, and the defendant, Hubbard, was the endorser. The whole sum secured by this last-mentioned note was the interest, beyond six per cent., upon a contract or loan previously subsisting between Blanchard. &f Ford and Eaton. That note, we all agree, was usurious and void; notwithstanding the * objection, that there was no promise in it, or reservation of unlawful interest upon the capita, thus secured. For within the equity, if not the words, of the statute, a note or other instrument, given to secure the unlawful interest, itself must be void. Otherwise, by giving one note for the principal, and another for the unlawful interest, they would both be good; the first, as containing no reservation of interest, and the second, as not containing any promise to pay any interest on the sum secured by it. Whereas both notes, given under such circumstances, would be void — being evidence of one contract, and that an unlawful one. And if it were not so, the statute of usury would be effectually repealed by the Court, which is bound to execute it.
The report states that Blanchard 8f Ford, the borrowers, being called on to pay this void note, asked for a longer credit, and that, Eaton consenting to give it on obtaining other security, the note now in suit was procured for the purpose of obtaining this credit. Hubbard, the defendant, who was liable on the first note, as endorser, made this note payable to Sumner, who endorsed it in blank, and it was delivered over by Blanchard &f Ford to Eaton, from whom it came, without any endorsement, to the plaintiffs.
We have, then, the consideration of the note now in suit, and the purpose for which it was obtained. The consideration, as it respected Eaton, was manifestly illegal; and the purpose was to give a further credit, upon a loan made absolutely void by the statute. It would seem to follow, conclusively, that this contract was also void; for it can hardly be supposed that a usurious lender of money can screen himself from the effects of the law, by giving up the security originally taken, and substituting another in its place, if this can be done, much ingenuity is not required to evade and defeat the statute.
The cases are numerous, in our own books as well as in the English authorities, which establish the principle that, where the original contract is usurious, any subsequent contract to carry it into effect is also usurious.
* The ground taken by the counsel for the plaintiffs is, that the note in suit was received in payment for the former note; that the former contract was cancelled and extin *95 guished ; and that, as neither the maker nor endorser of this was privy to the contract between Blanchard & Ford and Eaton, there was no usurious consideration.
If this were the true state of the case, we should agree with them, (a) But the facts reported negative this statement. Instead of being given in payment, this note was given, as other security, in lieu of the former note, and for the purpose of extending the credit. It was received by Eaton in this view, and for this purpose. It can, therefore, be considered in no other light than as a substitute for the note given up.
It is true that the borrower’s name does not appear upon this note; but we cannot perceive that this circumstance is essential, when the object and views of the party, for whose use the note was made, are such as appear in the report of this case. That the parties liable on the note were not privy to the usurious bargain, is not a fact of importance, if the true destination of the note was to secure such a bargain, made by others, for the use of him who was to reap the fruits of the bargain.
The case of Ackland vs. Pearce, 2 Campb. Rep. 599, settles this principle correctly. Pearce, at the solicitation of Waine, drew his bill on the latter, who accepted it, payable to his own order, and endorsed it to the plaintiff. There was a usurious agreement between Waine and the agent of the plaintiff, of which Pearce, the drawer, was wholly ignorant. He was, nevertheless, permitted to avoid the bill, on the ground of usury. A similar decision was had in the case of Young vs. White, 2 Campb. 140; and the same principle has been adopted in two cases in New York, 1 Johns. Cases, 60, 3 Johns. Cases, 66, 206.
But it is said that, in conformity with decisions of this Court, in favor of notes sold in the market at a discount exceeding the legal rate of interest, this note ought to be * established. We, however, see no parallel between the cases. The ground on which those decisions rest is, that there has been no loan, but an absolute purchase ; and the purchaser of a note is assimilated to the purchaser of a bill of exchange at a discount. However questionable that doctrine respecting promissory notes may have formerly been, we do not desire to disturb it, as it has become a known rule of law, affecting an important branch of commercial *96 transactions. In the case before us, no purchase was intended or suggested. The proposition, made by one party and acceded to by the other, was, that this note should be taken as security for a preexisting usurious loan. For this purpose it was made, and delivered to the usurious lender.
It is admitted that the case of Turner vs. Hulme. cited in the argument, contradicts this doctrine. There, a detainer being lodged against a debtor, who was in prison upon execution, the debt on which the detainer issued being usurious, the creditor liberated him, upon taking the note, of two other persons for the amount due. Lord Kenyon ruled that usury could not be objected against the second note, but that it ought to have been .objected to the first. We do not find this doctrine sanctioned by the Court of King’s Bench, although it was undoubtedly acquiesced in by counsel. But we think that decisions at Nisi Prius may be questioned, without any want of respect for the judge who makes them. If the principle adopted by Lord Kenyon be correct, it would be idle to attempt to execute the statute of usury ; for the borrower, who can find an endorser upon his note, may also find a friend to make a note for him; and usurious loans will always be carried on under this cover.
In the case of Cuthbert & Al. vs. Haley, all the judges agree that, if one security be substituted for another, the second security is void, if the first was usurious. And in the case of Maddock, quitam, vs. Hammatt & Al., it was determined that the usury was not complete, so as to render * the party liable in an action qui tam, upon the giving of a new security in lieu of the old ; and that the action would not accrue until the second note was paid. This case also goes upon the principle that the second note is not a payment of the first, but is only to be considered as a substituted contract. It is true that, in these cases, the original borrower remains liable on the new contracts; but we think that this makes no difference, where the agreement of the parties shows that a payment was not intended.
We are satisfied, from a view of all the cases upon the subject, that the note sued in this action must be considered as usurious, and that the verdict must stand. The plaintiffs may be unfortunate endorsees for a valuable consideration. If so, it is their own folly that they have lost their remedy against Eaton; for they should have required an endorsement by him. If they are merely the agents of Eaton, the loss will fall where it ought to fall, as well in equity as by law.
Jackson, J.
The usury between the former parties in this transaction was as excessive as can well be imagined. The borrowers, *97 Blanchard fy Ford, had from time to time repaid to Eaton, the lender, a sum equal to all that they had borrowed, with lawful interest; so that the 1250 dollars, for which the note of the 4th of December, 1815, was given, was wholly for excessive interest.. That note was of course void in law, and could never have been recovered against the makers or endorsers. The same consequence would have followed, if that note had comprised only one per cent beyond the legal interest. The great excess, therefore, of usury, in this case, although calculated to excite one’s indignation at the usurer, cannot affect the principle by which the case must be decided.
There is another circumstance, which I mention merely to throw it out of the case ; and that is, the doubt suggested whether the plaintiffs were bona fide purchasers of the note now in suit, and whether Eaton is not the real plaintiff in interest. This point is wholly immaterial as * it respects the question of usury ; because, if the contract was usurious, the note is void, even in the hands of an innocent and boná fide holder. If the defence were such as would apply only to a party to the original transaction, and not to an innocent purchaser of the note, the question whether the plaintiffs are such purchasers ought to be submitted to a jury. It is not competent to the Court to infer that fact from the evidence.
I have said that the note made on the 4th of December, 1815, was void on account of usury, and could not have been recovered by any one who should have held it. But Blanchard &f Ford might have paid it without a suit, if they had seen fit to do so. They might have paid it in cash, or by the delivery of merchandise, or of any other valuable article, to the acceptance of Eaton. The property in the merchandise so delivered would undoubtedly have passed to Eaton, as much as the property in coin or bank bills, in which the note might have been paid ; and he would, in each case, have been equally liable to an indictment, or an action upon the statute, for having taken excessive usury.
If, then, Blanchard & Ford, when called upon for payment by Eaton, in April, 1816, had had in their possession a note signed by Hubbard or any other person, they might have delivered this to Eaton, in payment of their debt to him ; and the property in the note would have passed, in like manner as the property in any other valuable article so delivered. If, indeed, the note had been made payable to themselves, and had been endorsed by them, the case would present another question, which it is not necessary now to consider. But if it were payable to a stranger, and endorsed by him in blank, (as it was in the case at bar,) so as to pass by mere *98 delivery, it would be considered in the same light as any article of merchandise.
So long as the usurious contract between Eaton and Blanchard & Ford, the borrowers of the money, remained open and executory, it could not be enforced by or against any of the parties to it; and the same principle would * apply to any security by which Blanchard Of Ford should be bound to Eaton for performance of the old contract. But the debtors might have refused to avail themselves of that defence. If we suppose a case in which the usury exceeded by a very little the lawful rate of interest, and that the borrower was conscious that the advantage to himself, and the inconvenience to the lender, were equal to the excess, and therefore felt himself bound in conscience to pay the debt, he certainly might, and, perhaps, as an honest man he ought to, waive this objection. If, in such a case, he is not able to pay the money, and therefore delegates a debtor of his own, who agrees to pay it for him, and who becomes bound accordingly to the lender, — it ought not to be in the power of this new debtor to avail himself of the defence which the original debtor had waived. It is, in this respect, not unlike the case of a mortgage on which usurious interest is reserved. If the mortgagor in such case conveys the land to a third person, subject to the mortgage, the grantee of this right of redemption cannot question the right of the mortgagee. This has been decided in this Court. (3)
In.the view which I take of the case, the transaction between Blanchard & Ford and Eaton, when the note now in suit was given, was a payment and discharge of the usurious contract. Eaton demanded payment. That was the time for Blanchard Ford, and all the other parties to the preceding note, to have resisted the demand. They might have resisted it successfully. But Blanchard &/• Ford, who alone were applied to for payment, yielded to the demand. It is true, as it is expressed in the report, they asked for further credit; but it is also true that no further credit was given to them. They were, from that time, discharged from all further obligations to Eaton.
I have been somewhat confirmed in this opinion, by not having ■been able to find a case in which any contract or security was held void for usury, unless the usurious borrower was a party to it, or unless it was given as collateral * security for a subsisting usurious contract — so that a recovery would tend, directly or indirectly, to enforce the usurious contract against the borrower. In other words, there must be a loan upon mi^e *99 than lawful interest, and the action must be brought to enforce the repayment of the loan. Now, in the case at bar, there was no loan by Eaton, nor by any one else, to the defendant Hubbard. He gave his note to Sumner, and Sumner endorsed it to Blanchard Ford for a lawful and sufficient consideration. He, then, cannot avoid the payment of the note on account of the use afterwards made of it by the lawful holder. From the circumstance that Hubbard was an endorser on the former note, we may conjecture that he was informed of the purpose for which the new one was made. But this would furnish, at most, but a ground of presumption that he was so informed, which appears to me very slight, and from which, whether strong or weak, it was competent for the jury only, and not for us, to draw the inference.
I say that the note was made for a lawful and sufficient consideration, because that is the legal presumption in the absence of all evidence to the contrary: we must presume that it was either given for a preceding debt due to Blanchard fy Ford; or that they paid the value for it at the time ; or that they gave satisfactory security, to Hubbard, to pay the amount at a future day.
It is said, in the report, that Blanchard &/• Ford procured the note for the purpose of giving it to Eaton, in discharge of the preceding debt. I cannot, however, infer from this expression that there was any usurious agreement on the part of Hubbard, nor even that he knew to what use Blanchard &f Ford intended to apply the note. If Hubbard had been previously indebted to Blanchard &f Ford in a large sum, and had made this note at their request, without knowing for what purpose they wanted it, it might still be true that Blanchard ty Ford, procured it for the purpose of giving it to Eaton. If any thing more is to be inferred from that expression, it is an inference of fact, which, as I apprehend, * ought to be left to the jury. Even if we could infer, from the testimony, that Hubbard knew the purpose for which Blanchard &f Ford procured the note, I am not aware that it would alter the case. If they had received money from Hubbard on account of a preexisting debt, and had paid over (he money to Eaton, Hubbard could not recover'it back by proving that he was informed, when he paid it, of the use to which it was to be applied. So if, instead of a note or money, they had received goods of Hubbard, and had delivered them under like circumstances to Eaton, the property in the goods would have passed to him, and Hubbard could not have reclaimed them.
I am not prepared to say that facts might not. have existed which would connect Eaton and Hubbard in this transaction, and also connect the note now in suit with that which was cancelled, in *100 such a manner that this his note would be tainted with the usury But I think no such facts appear in this case; and if they exist, they should be ascertained by a jury.
The opinion which I entertain on this subject derives some confirmation from the cases of Cuthbert & Al. vs. Haley, and Turner vs. Holme, which were cited in the argument; and, on the other hand, my confidence in it is very much impaired by finding that a majority of my brethren have come to a different result. I have, however, felt myself bound to declare the opinion which I still entertain, after repeated conferences on the subject and the fullest consideration I have been able to give to it.
Putnam, J., of the same opinion, (a)

Judgment on the verdict.

 A security given in lieu of a former security which was tainted with usury is void, unless in the second security a deduction is made of all sums taken or secured usuriously under the former security. Wicks vs. Gogerly, 1 Car. & P. 397. — 1 Ry & M. 123, Preston vs. Jackson. — 2 Stark. 237. — Pickering vs. Banks, Forrest, 72. — Saund. Pl. Ev. 898.— Vide Chadburne vs. Watts, 10 Mass Rep. 121, and the note to that case.

 13 Mass. Rep. 515, Green vs. Kemp.

 Vide Chapman vs. Black, 2 B. & A. 588. — Gaither vs. The Farmers' Mechanics' Bank, 1 Pet. 37. — Sauerwein vs. Brunner, 1 Har. Gill. 477. — Lowes & Al. vs. Mazeredo & Al., 1 Starkie, R. 385. — 1 Selw. N. P. 318,8th Lond. ed. — Harrison vs. Hannell, 5 Taunt. 780. — 1 Marsh. 349. — Akland vs. Pearce, 2 Camp. 599. — Young & Al. vs. Wright, 1 Camp. 140. — Bailey, Bills, 5th Lond. ed. 515.— Wales vs. Webb, 5 Conn. R. 154.— Conn. R. 284. — Scott vs. Lewis, 2 Conn. R. 132. — Bottsford vs. Sanford, 2 Conn. R. 276