## SUPREME JUDICIAL COURT

FOR THE COUNTY OF

# CUMBERLAND.

## MAY TERM

## 1821.

---

### WARREN *v.* CRABTREE.

If money be loaned on a usurious contract, and on maturity of the note it be partially paid, and a new note, similar to the former, be given for the balance, such new note is void for the usury.

And if the borrower be not a party to the usurious note, being neither maker nor indorser, but the security is such, both as to parties and time of payment, as had been previously agreed between the borrower and lender; the indorser, in an action against him, may shew the usury in bar of the action.

*ASSUMPSIT* by the indorsee against the indorser of a promissory note dated *May* 17, 1812, signed by *Ebenezer Mayo*, and made payable to the defendant or order, for one hundred and fifty dollars in sixty days with grace, and by the defendant indorsed to the plaintiff. The defence was *usury.*

It appeared that *Hugh M'Lellan*, some time in the year 1811, having occasion for a sum of money, applied to the plaintiff for the accommodation :—That it was agreed between him and the plaintiff that if he would procure a good note for five hundred dollars payable in ninety days, he, the plaintiff would discount it, at the rate of one *per cent.* per month :—That in pursuance of this agreement *M'Lellan* did procure a note signed by *Ebenezer Mayo*, and made payable to the defendant or his order, for five hundred dollars in ninety days, which note the defendant indorsed; and *M'Lellan* thereupon obtained the money of the plaintiff at a discount of one *per cent.* per month, which was the market value of the note. At this time it was the intention of

*M'Lellan* to pay the note at its maturity, which he had under-taken to *Mayo* and *Crabtree* that he would do. But before that time arrived, finding that he should not be able to pay the whole of the sum as he had intended, he agreed with the plain-tiff that he would pay two hundred dollars upon the note when it should become due, and for the remaining three hundred dol-lars he would procure another negotiable note from the same parties and indorsed as before, payable in sixty days; which he accordingly did, and paid the plaintiff the same rate of dis-count as before. This last note also, he expected to pay at its maturity; but being unable to do it, he again agreed with the plaintiff, before this note became due, to pay one hundred and fifty dollars thereon, and for the remaining moiety he was to procure another note signed and indorsed as before, paying the same discount. Accordingly he procured the note now in suit, and passed it immediately to the plaintiff. *M'Lellan* did not indorse either of these notes; and it was proved that the plain-tiff paid their fair market value; and that *Mayo* and *Crabtree* were secured against their liability on this note, by another note made by *M'Lellan* and indorsed by another person to them.

Upon this evidence the Judge who presided at the trial of this cause directed a nonsuit; it being agreed by the parties that it should be set aside, if, in the opinion of the Court, the law was with the plaintiff upon the evidence reported by the Judge.

*Kinsman* and *Greenleaf* for the plaintiff attempted to maintain these two positions :

1. That as *M'Lellan* gave the defendant his own negotiated note for the note in suit, he is to be considered as the indorsee of the defendant, and so a party to the note: and thus holding it, and selling it without his own guaranty, and for its fair market value, it is no usury. *Churchill v. Suter,* 4 *Mass.* 156.

2. That even if the transaction between *M'Lellan* and the plaintiff in the sale of the note were usurious, yet the defend-ant, not being a party to that transaction, ought not to be ad-mitted to take advantage of it. *Bearce v. Barstow,* 9 *Mass.* 45.

*Hopkins,* on the other side, replied as to the *first* point, that the doctrine was applicable only to those cases where the holder of the note, *doubting the solidity of the parties,* sold it for

what it would bring, without the guaranty of his own signature. But here the note was obtained for the express purpose of covering a usurious loan previously agreed upon; and was admitted to be a sufficient security for that purpose. *Ord on Usury* 98.

As to the *second* point, he denied that it was supported by the case cited; and contended that in all cases where the lender is a party to the record, usury is a good defence, as it brings the loss on the person offending; who is punished for the usury by the loss of his money. *Bridge v. Hubbard,* 15 *Mass.* 96.

MELLEN C. J. delivered the opinion of the Court, as follows:

The sum demanded in this action is part of a debt contracted in the year 1811. [Here the Chief Justice recapitulated the facts in the case as before stated.]

In examining the question presented in this case, it does not seem material whether the note in suit be considered as a *substitute* for a usurious note, and given to secure the balance due on the *second* note; or, as being *usurious in itself,* and in its *origin,* by reason of the verbal agreement to pay *twelve per cent.* interest.

It is a principle well settled, that if the " *original* contract is " usurious, any *subsequent* contract to carry it into effect is also usurious:" 3 *D. & E.* 531. 15 *Mass.* 96. and if the substituted security be given to the party to the original security, or his representative, it is void, according to the doctrine of *Cuthbert v. Haley,* 8 *D. & E.* 390.

The plaintiff opposes the defence on two grounds:—1. Because the plaintiff must be considered as having purchased the notes in the market, at a fair discount, and under such circumstances, that, according to the case of *Churchill v. Suter,* the contract cannot be deemed usurious.——2. Because the contract, if usurious, was not made by the defendant; and of course, that he is not entitled, by law, to set up such defence.

With respect to the *first* objection, when we look at the evidence in this case, we are not able to discover how the notes can be considered as having been *purchased in the market* by the plaintiff, so as to protect them from the operation of the statute. In cases of such purchase, the note is fairly made

without previous concert, or any stipulations relating to interest, and without reference to any one in particular as the intended purchaser. The note being signed and indorsed, is offered for sale. Its value in the market must depend on the responsibility of the parties to it, the time of payment, and the scarcity of money:—and the purchaser takes these particulars into consideration, and makes the purchase at what is supposed a fair discount. But in the present case, all was arranged beforehand. The loan was agreed upon,—the rate of usurious interest settled, between the plaintiff and *M'Lellan*, for whose use the loan was to be made,—and the names of the promissor and indorser were known and accepted as good. Surely if such a mode of doing the business could change the whole transaction into a *fair and innocent purchase of the note in the market*,—the law would be worse than useless, and such an evasion no honour to our Courts of justice.

The plaintiff's *second* point is entitled to more respect ;—but we apprehend it does not, in reality, possess any more merit or solidity than the former.

In the case of *Chadbourn v. Watts*, 10 *Mass.* 121. the substituted security was given to *Lancaster*, and afterwards indorsed to *Chadbourn* the plaintiff, who had no notice that usury had infected any of the preceding securities which had been given up ;—and in this respect it differs from the case at bar.

In *Cuthbert v. Haley*, before cited, *Grose J.* expressly states that if the bond, which was the substituted security, had been given to *Plank*, who was the party to the original security and lender of the money on usurious interest, it would have been void :—and the Court proceeded on this principle.

In *Young v. Wright*, 1 *Camp.* 139. the contract for usury was not made by the defendant, but between third parties ;—but *Lord Ellenborough* decided the defence to be good.

According to the decision in the case of *Bridge v. Hubbard*, 15 *Mass.* 96. cited at the bar, it is of no importance that the contract for the usury was made by *M'Lellan* with the plaintiff and the notes signed by *others*,—he being no party to them :—because it was known by all concerned that the loan was for his *exclusive* benefit, and the mode of securing the sum was agreed to by the plaintiff. It is true the Court were divided in

Warren *v.* Crabtree.

opinion in that case ; but the division was upon a question that does not seem to arise in the present case. Two of the Court there considered the *former contract,* which all admitted to be usurious, as *cancelled and extinguished* by payment. In the case before us it expressly appears that the *last* note was given to *secure the balance due on the second.* But if this distinction did not exist, we might refer to the case of *Maddock v. Hammet,* 7 *D. & E.* 184. to shew that such substitution of securities does not amount to payment :—and also to *Davis v. Maynard,* 9 *Mass.* 242. by which it appears that a new, and even higher security, given for a debt secured by mortgage, does not discharge the mortgage.

If the note declared on be considered as unconnected with the preceding notes, the result must be the same ;—because, at the time it was given, there was an express promise on the part of *M'Lellan* to pay *twelve per cent.* interest, and all was executed according to the wishes of the plaintiff, and by a preconcerted arrangement with him for the usury, and for the kind of security. If the principal and interest are secured by distinct notes, or the usury by a parol promise only, and all are executed at the same time,—all are void ;—because such promise to pay interest constituted a part of the contract *for the loan ;* and the statute declares the *whole contract void.* If such a device could protect the lender from the penalties of the statute, it would always be evaded with impunity.

We are therefore all of opinion that the motion to set aside the nonsuit must be overruled, and that there must be

*Judgment for the defendant.*