Mr. Justice ThacheR
delivered the opinion of the court.
Appeal from the decree of the chancellor, ordering the foreclosure of a mortgage.
It appears from the record, that Hiram G. Runnells conveyed land to George W. Adams, but the deed of conveyance was not recorded, and is alleged to have been lost. Adams executed a mortgage to Runnells, to secure the payment of the notes given for the purchase-money of the land. Subsequently, Runnells indorsed the notes, and assigned the mortgage to Rowan and Harris, the complainants, as is set up in the answer of Rowan and Harris to the cross-bill of Runnells, as the consideration for the settlement and compromise of a suit at law, instituted by Rowan and Harris against Runnells, upon certain bills of exchange, drawn by Runnells, the consideration of which was the sale, by Rowan and Harris, to Runnells, of slaves introduced into the state, as merchandise, by Rowan and Harris, since 1833, in violation of the constitution; which suit at law was being contested by Runnells, on the ground of a failure of consideration, occasioned by the unsoundness of a number of the slaves, which were the subject of his purchase. After the indorsement of the notes, and the assignment of the mortgage by Runnells, to Rowan and Harris, Runnells and Adams, as is set up by Runnells in his answer, cancelled the sale of the land and the contract relating thereto; and thereupon Runnells, thus reinvested with the land, conveyed it to John Watt, in payment of a preexisting debt, due by him to the firm of Burke, Watt, & Co., and which had been assigned by that firm to the individual account of Watt, and, at the time of the conveyance, informing Watt of the existence and assignment of the mortgage, but assuring him of its invalidity. Runnells resists the decree of foreclosure, on the ground of the illegality of the consideration for the indorsement of the notes, and the assignment of the mortgage, and likewise sets up the unsoundness of a number of the slaves purchased by him of Rowan and Harris.
The notes and mortgage,-securing their payment, were originally executed for a legal and valid consideration, as between Adams and Runnells. In the hands of Runnells, the notes and *638 their incident, the mortgage, possessed a valid and valuable consideration. It is possible, however, that notes, the consideration of which was valid and legal between the original parties, may become void for illegality as to subsequent parties, who are also parties to the illegality, and even as to a bona fide holder, if he be compellable to make his title, through the parties to the illegal consideration, and such passage of title be void by law. Story’s Bills of Exchange, sec. 190. It must, therefore, be first settled, that there was illegality in the in-dorsement, and assignment of the notes and mortgage, by Run-nells, to Rowan and Harris. If the indorsement and assignment were made, as the consideration for the purchase and sale of slaves, introduced into this state, as merchandise, and for sale, since the year 1833, then, it having been determined by this court that all contracts for slaves introduced into this state as merchandise, or for sale, after the first day of May, 1833, are void, by virtue of the prohibition of the constitution in relation to such introduction, (Brien v. Williamson, 7 How. 14,) it must necessarily follow that the indorsement and assignment are void, as between Runnells and Rowan and Harris. The proof shows this to have been the fact.
But it is contended that the consideration of the indorsement, and assignment of the notes and mortgage, was not the purchase-money of the slaves, but was a consideration extended, by Runnells, to Rowan and Harris, in settlement and compromise, and for surceasing the suit which Rowan and Harris had instituted upon the bills of exchange given for the purchase-money of the slaves, and that they were exempted, by this new consideration, from the fatal effects of the original contract, it having been cancelled by this payment. This latter contract was, however, equally void. It was between the same parties, and related to the first void contract, and its illegal consideration. It cannot be permitted, that the parties to a contract void, by law, may evade the provisions of that law, by giving up the security originally taken, and substituting another in its place. It is well settled, that when an original contract is illegal, any subsequent contract, which carries it into effect, is also *639 illegal. And, whenever, in cases of this character, the subject-matter of the contract can be traced back, between privies, to an original illegal contract, the substituted security is void; and even if the parties liable in the last security, were not privy to the illegal bargain, the same result has been held to prevail, if the true distinction of such security was to secure such a bargain, made by others, for the use of him who was to reap the fruits of the bargain. Collins et al. v. McCargo, 6 S. & M. 135. The foregoing principles will be found elaborately discussed in Bridge et al. v. Hubbard, 15 Mass. 96.
The case therefore resolves itself into an application to the chancery court to compel the collection of notes which were yoid in the hands of their holders, by enforcing the foreclosure of a mortgage, by which their payment was secured. The mortgage, being an incident of the notes, partakes of their character and follows their fate. The mortgage, in the hands of Rowan and Harris, was void, as well as the notes.
The chancery court was not required to look further than to ascertain the fact, that the notes and mortgage were void, in the hands of Rowan and Harris; and, upon that circumstance sufficiently appearing, it could safely decree, without reference to equities that might be supposed to have arisen between Run-nells and others, claiming under him and Rowan and Harris, upon the ground of the invalidity of the contract of indorsement and assignment. The security was void in the hands of the complainants, and could not be enforced for their benefit in the chancery court, and it should so have been decreed.
The decree of the chancellor is consequently reversed, and the bill and cross-bill directed to be dismissed without prejudice.