Mr. Justice Thacher
delivered the opinion of the court.
Terrell filed his bill in the superior court of chancery, and charged that in 1837 he made a note for the sum of $1000, payable to Page, and delivered it to him; that the sole consideration of the note was an amount of a bet lost by him to Page upon a horse-race, in which, moreover, he charges that he was swindled; that afterwards Page transferred the note to Martin, who presented it to the complainant for payment, who informed Martin of its consideration being a gaming transaction; that subsequently he was prevailed upon and did make another note for the sum of $900, payable to Martin, and delivered it to him in the place of the first note, but for no new or other consideration; and that Martin instituted a suit at law upon the latter note, and recovered a judgment thereon.
*573 Martin answered, and replied, that as to the consideration of the first note being an amount of nioney won upon a horse-race, he knew nothing; but that Page informed him that he gave a negro for the note of equal value to it; that he himself gave Page a negro of the value of $1000 for the note; that upon his application for payment to Terrell, he was not informed by him that the note was given for a gaming consideration, but that Terrell said Page was indebted to him in some amount, which if he would deduct from the.note, he would pay the balance; that the sum of $100 having been deducted, Terrell, with others, made the note of $900, and received the first note, knowing at the time the consideration which passed between Page and Martin.
Page testified, that he won $1500 of Terrell in a bet upon a horse-race, of which sum he afterwards lost $500 to Terrell at cards, and that the note of $1000 was given him by Terrell for the balance due upon the bet upon the horse-race; that he gave Martin this note for a negro; and that he has no recollection of informing Martin what consideration passed from him to Terrell for the note.
McDugald testified, that the note for $900 was given in lieu of the note for $1000; that Martin placed with h'im the note for $1000, as attorney at law, for collection, which he presented to Terrell for payment, who objected to $100 of its amount, which, being deducted, the note of $900 was made, the note of $1000 given up to Terrell, and a note for $100 made by Page to Martin ; and that Martin had informed him that he had learned from the Brandon Bank that the consideration of the .$1000 note" was a gambling transaction, and desired him to do the best he could with it.
McCormick testified, that he derived the impression from a conversation between Terrell and Martin, that the latter’s reason for taking the note of $900 was because he had found that he could not recover upon the note for $1000.
Joshua Terrell testified as to Page’s insolvency.
Although it would seem from the evidence, especially that disclosed by McDugald, that Martin was apprized of the consideration for which the note of $1000 was given, before the *574 note of $900 was made and delivered to him, the cause can be decided upon the facts as presented by Martin’s answer to the bill. It presents this question; — Can an assignee for a valuable consideration of a note given for money won at gaming, who surrenders it to the maker and takes a new note, payable to himself, the maker knowing of that valuable consideration, recover the money against the prohibition of the statute upon gaming ? This question and all the points involved in this case are decided by that of Lucas v. Waul, [ante, 157,] determined at the present term of this court.
The circumstance that Terrell did not make the nature of the consideration of the note a defence to the suit at law does not preclude him from relief in equity, for a judgment upon a gaming contract is void, and chancery will interfere, although the defence might have been made at law. Humphries v. Bartee, 10 S. & M. 282; Lucas v. Waul [ante, 157]; Thomas v. Phillips, 4 S. & M. 427; Skipwith v. Strother, 3 Rand. 214.
Our statute against gaming makes any note given for money won at a horse-race utterly void. Hutch. Code, 940, art. 3, 'sec. 1. Speaking upon this subject, Chancellor Kent says : — “ There are but two cases in which a bill or note is void in the hands of an innocent indorsee for valuable consideration; and these cases are, when the consideration in the instrument is money won at play, or it be given for a usurious debt. The English statutes against usury and gaming (and which have been adopted generally throughout the United States) are peremptory, and make the note or bill absolutely void.” 3 Kent, Comm. 80.
But the whole case shows that Martin took the $1000 note upon the representations of Page and not of Terrell, and the testimony of McCormack and McDugald establish that he knew the character of its consideration before the note of $ 900 was substituted for it. As assignee, therefore, of a note given for a gaming consideration, he has no more equity than the assignor. We do not say that if an innocent man should be induced by the maker to become the purchaser of such a note, that he ought to be subject to the same equity to which the maker is *575 entitled against his payee. It would be a deceit upon him. In such a case, after a recovery at law, chancery might perhaps not interfere where the equity is on the side of him who has obtained the legal advantage.
Again, the note of $ 1000 was unquestionably void; its renewal in the shape of the $900 was upon the same consideration, and was void also. The first was a nullity, and its being given up for the second, cannot be made to support the latter as valid. Collins et al. v. McCargo, 6 S. & M. 134; Adams v. Rowan, 8 Ib. 638; Bridge et al. v. Hubbard, 15 Mass. R. 96; 1 Carr. & Payne, 397; 1 Ry. & M. 123; 2 Stark. 237; Saund. Pl. and Ev. 898.
The decree of the chancellor making the injunction in this case perpetual is affirmed.