JUNE TERM, 1870. 177

The First National Bank of Milwaukee vs. Plankinton.

## The First National Bank of Milwaukee vs. Plankinton.

Usury: (1.) *Knowledge and intent of lender sufficient.* (2.) *Substituted note of indorser, not purged.*

1. Where a lender knowingly contracts for an illegal rate of interest, the contract is usurious, although the borrower is ignorant of the facts.
2. Where one held to the payment of a note as indorser, the makers being insolvent, gives his own note for the amount apparently due, to procure forbearance, he may defend an action on such substituted note on the ground of usury in the former one, although he was ignorant of the usury when he made his own.

APPEAL from the Circuit Court for *Milwaukee* County.

The defendant gave his own note to M. Von Baumbach & Co., November 27, 1868, for the principal sum due by the terms of two notes previously made by E. Salomon & Bro. to the same payees, and upon which (they not having been paid at maturity) defendant had been charged as indorser. The plaintiff purchased defendant's said note before maturity, in good faith, without knowledge of any facts invalidating it; and after it became due brought this action upon it. The defense was, that the two notes of E. Salomon & Co. were void for usury. The court instructed the jury, in substance, that even if the notes of E. Salomon & Co. were usurious, the defendant's note in suit was a new contract, and was free from the taint of usury. Verdict and judgment for the plaintiff; and defendant appealed.

*Wells & Brigham* (with *O. H. Waldo*, of counsel), for appellant.

*Butler & Winkler*, for respondent.

*Wells & Brigham*, with whom was *O. H. Waldo*, of counsel, argued that substituted securities for a usurious loan are as void as those for which they are substituted, when given to the same party who committed

the usury (*Bridge v. Hubbard*, 15 Mass. 95; *Tuthill v. Davis*, 20 Johns. 285; *Warren v. Crabtree*, 1 Greenl. 167; *Chapman v. Black*, 2 Barn. & Ald. 589); that a new note given by a party liable on a usurious note, for the purpose of taking it up or extending it, is not a *payment* of the usurious note (*Maddock v. Hammett*, 7 Term, 180); that it does not change the rule in this case, that defendant, the indorser of the original and maker of the substituted note, was ignorant of the usury (*Ackland v. Pearce*, 2 Campb. 599); nor does it change the rule that the makers of the original paper are not parties to the new security, the provisions of our statute against usury applying "rather to the *contract* than to the *parties*" (*Botsford v. Sanford*, 2 Conn. 276; opinion of SMITH, J., in *Townsend v. Bush*, 1 id. 269; *Wales v. Webb*, 5 id. 156; *Chapman v. Black*, 2 Barn. & Ald. 589); that in order that a contract tainted with usury may be purged, there must be a mutual intention and agreement between the parties to the usury to abandon the contract, and the securities must be cancelled (*Hammond v. Hopping*, 13 Wend. 512); that the exceptional cases in which a substituted security has been held good, stand on the principle of protecting, as far as possible, an *innocent third party*, who had no notice of the usury, and there is no case where a new security, given by a party liable on the usurious paper, to a party to the usury, has been held good. *Dix v. Van Wyck*, 2 Hill, 523.

*Butler & Winkler*, for respondent, argued that a note is not usurious *simply* because it was given for a prior usurious note; that the leading case of *Cuthbart v. Haley* (8 Term, 390) decided that where the new note is given to a subsequent holder who has no knowledge of the usury, it is good, and this case has been followed by all the English and American cases since; that the distinction between such cases and those of a plain renewal between the parties to the original paper can be sustained only on the ground that to constitute

usury in any contract there must be an *agreement* for that purpose—a meeting of the minds of the contracting parties in the purpose to break the law, so that if one of the parties to the new contract is ignorant of the usury in the old, such new contract is not usurious. *Ellis v. Warnes,* Cro. Jac. 33; Moore, 573; *Jackson v. Henry,* 10 Johns. 185–195; *Chapman v. Black,* 2 Barn. & Ald. 588; *Stanley v. Kempton,* 30 Me. 118; *Brown v. Waters,* 2 Md. Ch. Dec. 201; *Jones v. Jackson,* 14 Ala. 186; *Little v. White,* 8 N. H. 276; *Lowell v. Johnson,* 14 Me. 240; *Bearce v. Barstow,* 9 Mass. 45; 2 Parsons on Con. 120; *Otto v. Durege,* 14 Wis. 571–574, and cases there cited; *Smith v. Beach,* 3 Day, 268. Counsel further commented on the cases of *Fields v. Gorham,* 4 Day, 251; *Bridge v. Hubbard,* 15 Mass. 95; *Warren v. Crabtree,* 1 Greenl. 167; *Tuthill v. Davis,* 20 Johns. 285; *Vickery v. Dickson,* 35 Barb. 96; *Botsford v. Sanford,* 2 Conn. 276; *Chadbourne v. Watts,* 10 Mass. 121; *Clark v. Phelps,* 6 Met. 296; and contended that it was clear on principle, well supported by authority, and consistent with all decided cases, that where a contract is made by one who has no knowledge of the usury, without the intervention or internegotiation of the borrower on usury, the contract is not usurious so that, if negotiable, it is void in the hands of a *bona fide* purchaser. 2. A note given in *payment* of a usurious debt is good (*Stanley v. Kempton,* 30 Me. 118, 121; *Bridge v. Hubbard,* 15 Mass. 95, 96; 9 Mass. 46; 8 N. H., 276; 2 Md. Ch. Dec. 201; 9 Mich. 21; 3 Parsons on Con. 121); and it is only when the new contract is *substituted* for the old one that it is tainted with the usury. Can there be such a substitution unless the new paper is put in the place of the old one *by the borrower,* or at least *for his benefit and at his request,* or by some other party to the contract who is privy to the usury? The common test as to whether a note is received in *payment* or not, viz., the discharge of the indebtedness for which it is given, cannot here apply; for where the new one is substi-

tuted in the strict sense of the term, the old one is fully discharged as well as in case of payment. 3. In all cases where the new or substituted contract has been held void by reason of usury in the former one, the usury in that former one was a conceded fact, and in entering into the new contract the lender intended to obtain by it the payment of a recognized usurious debt. In the case at bar, the alleged usury in the two notes taken up by *Plankinton* is denied, and has always been denied, by Von Baumbach & Co. Although a borrower may claim that his note is usurious, yet if the lender, in good faith, disputes this and claims that the note is valid, and a new note is given, the claim of usury cannot be revived against this new note in the hands of a *bona fide* holder. This, *at least*, is decided in *Turner v. Hulme*, 4 Esp. Ca. 11. 4. A usurious debt is not so absolutely void that it cannot be ratified. It is like a contract barred by the statute of limitations. *Murray v. Judson*, 5 Seld. 73; *Smith v. Marvin*, 27 N. Y. 137; *Riley v. Gregg*, 16 Wis. 666; *Carter v. Moses*, 39 Ill. 539. The notes of Salomon & Bro., even if usurious, were not without value in the hands of Von Baumbach & Co. They gave them up in good faith, receiving in return the note in suit. Von Baumbach & Co. can never fall back on those old notes. Certainly the plaintiff cannot fall back upon them. *Plankinton's* note was received in exchange for them just as if it had been received on a purchase of merchandise. It amounts to payment. And thus, having paid them, *Plankinton* can at once maintain an action against the makers upon them (*Howe v. R. R. Co.*, 37 N. Y. 297, and cases there cited; *Morehouse v. Northrop*, 33 Conn. 380); and the alleged usury would be of no avail against him. Blydenburgh on Usury, 102. The practical result is, if *Plankinton* is allowed to set up the defense of usury here, that he may recover from Salomon & Bro. the amount of their notes, and yet escape from paying his own.

Dixon, C. J.  *Plankinton*, the maker of the note in suit, was the indorser and one of the parties liable for the payment of the previous alleged usurious note, in consideration of which the note in suit was given to the same payees.  The note alleged to have been usurious was made by E. Salomon & Bro., and indorsed by *Plankinton*, who had been duly charged for its payment, and he gave this note in lieu of that, taking it up and obtaining an extension of time for sixty days upon payment of lawful interest to M. Von Baumbach & Co., the payees.  This was done by *Plankinton* in ignorance of the alleged usurious character of the prior note, in consideration of which his own new note was given.  *Plankinton's* sole object was to relieve himself from immediate liability as indorser, and to obtain time in which he might more conveniently discharge that obligation.  It was no new loan of money by M. Von Baumbach & Co. to him, no borrowing on his part, and no new transaction more than what the facts above stated indicate.  The court below instructed the jury, as matter of law, that the giving of his own note by *Plankinton* under such circumstances, in place of the alleged usurious paper, purged the transaction of usury, and that the note of *Plankinton* was a new contract between the payees and him, free from any taint of usury.

The learned counsel for the plaintiff argue very ingeniously and elaborately in support of this instruction; but they have failed to convince us of its correctness.  Time forbids that we should pursue the argument step by step, or in its various details, and it seems scarcely necessary to do so, since the turning point or foundation of it all is the want of knowledge of *Plankinton* of the alleged usurious character of the prior note at the time his own note was given.  It is assumed as the basis of the argument, that there must be an intention to violate the law as well on the part of the person who makes the paper as on the part of him who

receives it, in order to constitute usury; or, in other words, that it is matter of intent in the borrower as well as the lender, and that both must concur, or there is no usury. *Plankinton* was ignorant of the alleged usurious character of the prior note for the payment of which he was liable as indorser, and for which he gave his own note in substitution, and therefore could not have intended, in giving his own note, to perpetuate or carry into effect the previous usurious contract; and so there was no usury, or the transaction was purged, however usurious and corrupt the intention of the payees, M. Von Baumbach & Co., may still have been. Such is the fundamental proposition urged; and the question is, whether it is sound or not. Counsel quote the language of this court in *Otto v. Durege,* 14 Wis. 574, that "to render a contract usurious, both parties must be cognizant of the facts constituting the usury, and have a common purpose of evading the law." The facts of that case were the reverse of this with respect to the party having knowledge of the facts. It was the lender there, or purchaser of the note, who had no knowledge of the facts and no intent to violate the law; whilst the borrower, and the person engaged in the negotiation for him, had both such knowledge and such intention. The labor in that case, therefore, was to show that there could be no usury unless the lender knew the facts and intended it, and that it was not enough to prove that the borrower alone had such knowledge and intent, and so the language in question was used, that both parties must have been cognizant of the facts constituting the usury, and have had a common purpose of evading the law. The language was used as denoting no more than that in such a case, the knowledge and intent of the borrower being shown, the same knowledge and intent must also be shown against the lender before he can be charged with an infraction of the law. Broadly construed, and taken without reference to the particular facts of the case in

which it was used, the language is undoubtedly susceptible of the meaning given to it by counsel; but such was not the intention of the writer.  It was intended to assert no more than that in a case of that kind both parties must know the facts and intend the usury, or that the lender as well as the borrower must know them and intend it.  And it was not intended to assert the opposite proposition, that, if the lender knew and intended the usury, but the borrower did not, the usurious nature of the agreement would not be established.  No such proposition as this was involved in the case, or could have been adjudicated, and it was not intended to be.

And it seems to us it would be contrary to the language, spirit, policy and intent of all our usury laws, and to the construction they have uniformly received, were it to be held that such proposition is in all cases true, or that it is true in a case like the present.  It is a familiar doctrine or rule of construction with respect to these laws, supposed to be enacted to protect the weak and necessitous from being overreached and oppressed by the powerful and the rich, that both parties are not *participes criminis*, but only the lender can be regarded as the oppressor, and he alone is within the pale of the law.  All the penalties of the law are enacted against him, and he alone can be guilty of a violation of it.  From the advantages of his position it is supposed he may dictate such terms and conditions as he chooses, while the borrower, from the necessities of his, is bound to submit to his demands.  Hence the borrower, whatever his knowledge or intention may be, is always regarded as innocent.  Now, however much we may differ from the legislature respecting the wisdom and expediency of such laws, as I for one do, we must nevertheless administer them according to the spirit and intent in which they originated; and that spirit or intent is no doubt correctly exhibited, and proper effect given to it, by the doctrine or rule of

construction just referred to, which has received the sanction of the courts almost everywhere, and also of this court.   *Wood v. Lake*, 13 Wis. 96, and authorities cited.   And it would be very strange, we think, in view of this settled doctrine and policy of the law, it clearly appearing that the only party who could commit the offense had in fact intended to commit and had committed it, were it to be held that he was innocent and had incurred no penalty, merely because the other party to the contract, whom the law regards as blameless, and who could not commit the offense, did not know such unlawful intent, or the fact that the contract was usurious, at the time of entering into it. To illustrate, we might suppose the parties, in a proper case, to be contracting with reference to the laws of some other state or country, which are taken notice of as facts, and that the borrower, being ignorant of or mistaken as to the true and lawful rate of interest fixed and allowed by such laws, should pay or agree to pay a greater rate, and one which was unlawful and usurious by those laws, believing it to be lawful; and that the lender, well knowing it to be unlawful and usurious, should bargain for or accept the same: would not the promise or obligation of the borrower be usurious and void in the hands of the lender?   It seems to us very clearly it would; and just so we would say of any other fact constituting usury, known to the lender and showing his actual and intended violation of the law, no matter whether the same fact was known to the borrower at the time or not.   And we believe there is nothing in the case of *Otto v. Durege,* either in the point decided or in the language of the opinion, in conflict with this view.   And we believe, also, that this view is decisive of the present case, and fully answers the positions and argument of the learned counsel for the plaintiff.   It is conceded by them that the taint of usury attaches to paper which is given in mere substitution for that which was usurious.   It is

## JUNE TERM, 1870.                185

The First National Bank of Milwaukee vs. Plankinton.

conceded that if E. Salomon & Bro. had given their note for the extended time, that would have been usurious. It is also conceded that if the note in suit had been given by the defendant at the request of E. Salomon & Bro., or with their knowledge and assent, it also would have been usurious. It would then have been, as counsel say, new paper put in the place of the old by the borrower, who was privy to the usury, or at least for his benefit and at his request. Would it have made the slightest difference in the character of this paper as a substituted security, so far as the payees were concerned, had it appeared that E. Salomon & Bro. had requested the defendant to go to the payees and give his note in the manner he did ? It seems to us clearly not, and that the character of the paper, whether as a substituted security or a new note received in payment, must depend upon the nature of the transaction and the intention of the parties to it at the time. E. Salomon & Bro. had failed, and hence their signature was no longer of any value. *Plankinton* was the only solvent and responsible party to the old note, and it was to him alone the payees looked for payment. They must, we think, have regarded it as a substitution under the circumstances, and so must *Mr. Plankinton.* It has all the appearance of a substitution, as much so as any of the previous renewals when E. Salomon & Bro. signed and *Plankinton* indorsed. If, therefore, such was its character, as we believe no jury could fail to find, then if the former note was usurious, the note in suit must also be. It is by one of the same parties liable upon the former note, and to the same payees, and for the very same consideration. In the language of SWIFT, C. J., in *Bottsford v. Sanford,* 2 Conn. 279, it is "the same usurer and the same usury." And the usury is being enforced against the same party against whom it was formerly proposed to enforce it, and upon a note taken by the same lenders, who knew it, if it existed, at the time the note was

taken, and must be presumed to have intended to keep up and avail themselves of the promise to pay it in violation of law. It is impossible, under such circumstances, to say that the usury was not carried forward into the new note with the knowledge and assent of the payees, and that the maker shall not have the same defense to it that he would have had, as indorser, to the old note in place of which the new one was given, if suit had been brought against him upon that. And it is equally impossible, we think, both on principle and authority, to say either that the usurious taint was purged, or that the payees or lenders should be excused or protected, merely by reason of the ignorance of the maker of the new note of the usurious character of that in place of which it was given. We have endeavored to show that knowledge on the part of the borrower, or party standing in that relation, or who represents him as the unpaid or unsecured surety does, is immaterial, but that it is the guilty act and intent of the lender which the law seeks to punish, and that it is enough if it appears that *he* knowingly and intentionally violated the statute. In this view, it was immaterial that *Plankinton* had no knowledge of the usury. It was the same as if he had had such knowledge, or as if E. Salomon & Bro., who did have it, if usury there was, had renewed the note.

It follows from these views that the court below erred in giving the instruction in question; and the judgment must be reversed, and a new trial awarded.

*By the Court.*—It is so ordered.