FARMERS' & MECHANICS' BANK OF MERCER *v.* HOAGLAND.

*(Circuit Court, W. D. Pennsylvania.* May 10, 1881.)

1. NATIONAL BANKS—USURY—SET-OFF.

Interest in excess of the legal rate, received by a national bank, although taken in the renewal of a series of notes, cannot be applied by way of set-off or payment in a suit upon the last of the series.

2. SAME—SAME.

In such case, however, the bank cannot recover the illegal interest, although such interest has been finally incorporated in notes bearing legal rates.

3. SAME—SAME.

Neither can the bank recover any interest upon such renewal notes from the date the interest has been reduced to the legal rate.—[ED.

Demurrer.

*W. W. Shafer,* for plaintiff.

*Samuel H. Miller,* for defendant.

ACHESON, D. J. This is a suit to recover the amount of two promissory notes, payable to the plaintiff or order 90 days after date,—one dated July 24, 1880, for $3,618; the other dated August 25, 1880, for $3,740.50. The defendant is one of the makers, and, by a written agreement indorsed thereon, is the individual guarantor of each of the notes. The declaration is upon the guaranty, with the common counts added. The case came before the court, and was argued upon a demurrer to the defendant's plea, but the parties have filed a written stipulation that the court shall enter a final judgment conformably to the disposition which may be made of the demurrer.

The facts, as disclosed by the record, are as follows: The notes in suit are respectively the last renewals of two series of notes, the originals of which bore date October 27, 1875, were each for $3,000, one at 60 and one at 90 days, and were discounted by the plaintiff, a national bank, at the rate of 10 per centum, which was then paid to the bank. Those notes were each renewed 19 times, at intervals of 90 days, the parties to the several notes being in all instances the same. The

interest charged at the several renewals, down to that of April 6, 1877, inclusive, in the case of one of the series, and down to that of May 5, 1877, inclusive, of the other series, was at the rate of 10 per centum, and it was paid to the bank, except that in three instances the discount in whole or part was included in the new notes as part of the principal. The interest charged at the several subsequent renewals, down until that of April 18, 1879, inclusive, of the one series, and that of February 15, 1879, inclusive, of the other series, (with a single exception, where 6 per centum was paid,) was at the rate of 9 per centum, which was sometimes paid to the bank and sometimes added into the new notes as principal. At the renewals on July 19, 1879, of the one series, and on May 19, 1879, of the other series, and at all renewals thereafter made, the interest charged was at the rate of 6 per centum, the rate authorized by the Pennsylvania act regulating interest, and on each occasion was included in the new note as part of its principal.

The demurrer admits that upon the discount of the original notes the bank charged and received usurious interest, and that at the several renewals, down until those of May 19 and July 19, 1879, the bank charged more than legal interest, part of which, as already mentioned, was paid the bank, and part included in the notes given in renewal. The controversy relates to the amount recoverable by the bank in view of the provisions of sections 5197 and 5198 of the Revised Statutes. The former section limits the rate of interest chargeable by a national bank to that allowed by the local law, and the latter declares that "the taking, receiving, reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon;" and in case the unlawful rate has been paid, a penalty of twice the amount thereof is inflicted. The pleadings suggest three questions for solution:

1. Can the defendant set off against the plaintiff's claim

the usurious interest paid to the bank? That he cannot do so is settled by the case of *Barnet* v. *The National Bank*, 98 U. S. 555, which decides that interest in excess of the legal rate, received by a national bank, although taken in the renewals of a series of bills, cannot be applied by way of set-off or payment in a suit upon the last of the series; the only remedy open to the party aggrieved being the penal suit given by the statute.

2. Can the plaintiff recover the interest charged at the earlier renewals at rates in excess of the legal rate, and included as part of the principal in the notes in suit? We are clearly of the opinion that he can recover no portion of such interest. By the terms of the act of congress the charging of such rates of interest worked a forfeiture of the entire interest which the several notes carry with them. Now such forfeiture was not waived by the giving of the subsequent notes, although as respects them the agreed rate of interest was a legal rate. They were mere renewals, and given without any new consideration. Nor did the new notes operate as payment of the debts for which they were given. *Peter* v. *Beverly*, 10 Pet. 533; *The Kimball*, 3 Wall. 37. In so far, then, as the notes in suit embrace the forfeited interest, they are without consideration. Moreover, it is an established principle that if there be usury in the original transaction, it affects all consecutive securities, however remote, growing out of it. *Walker* v. *The Bank of Washington*, 3 How. 62; *Campbell* v. *Sloan*, 62 Pa. St. 481. And neither the renewal of an old nor the substitution of a new security between the same parties can efface the usury. Id.

3. Can there be any recovery for interest from the dates at which the bank reduced its charge to a legal rate? We have already seen, from the authorities cited, that the notes in suit did not operate as payment, and that the taint of usury inheres in them. When the rate of interest was reduced to a legal standard, instead of purging the new notes then taken of all illegality, the bank incorporated in them usurious interest previously charged, as part of the new principal, and this

illegal consideration pervaded the whole subsequent series of notes. Furthermore, upon every fresh renewal, interest was charged upon the usurious interest which had entered into the prior notes as principal. Thus the rate was but nominally reduced to 6 per centum, for with reference to the amount legally due the rate was in excess thereof. It appears, therefore, from the admissions upon this record, that the bank, from first to last, persisted in its usurious charges.

In *Barnet* v. *The National Bank, supra*, 558, it was declared that where illegal interest has been knowingly stipulated for, but not paid, there only the sum lent, without interest, can be recovered. And in the *First Nat. Bank of Uniontown* v. *Stauffer*, 1 FED. REP. 187, it was held by this court that where a usurious rate of interest had been paid a national bank upon the discount of a note, no interest accruing after the maturity of the note could be recovered, but only its face amount. Judge McKennan there says: "By the operation of the act a usurious contract is inherently vicious, so that it cannot carry any interest with it." The authorities, therefore, are decisive against the right of the plaintiff here to recover any interest whatever upon the usurious transactions. It is to be added, however, that one of the notes in suit includes an item of indebtedness of $102 growing out of an independent matter.

Upon the demurrer, and under the stipulation of the parties, let final judgment be entered for the plaintiff,—the judgment to include—*First*, the face amount of the original notes, to-wit, $6,000, without interest; and, *second*, the sum of $102, with interest on the latter sum, to be computed by the clerk.