MATHEWS' ADM'R

*v.*

TRADERS' BANK.

(*Supreme Court of Appeals of Virginia, March 18, 1897.*)

[27 S. E. Rep. 609.]

**Bills of Exception—Reference to Another Bill—When Not Necessary.***

The court may supply an omission in a bill of exceptions from another bill of exceptions which contains all the evidence, and was taken at the close of the trial, though the one makes no reference to the other.

**Usurious Notes—Renewal of—Case at Bar.**

The fact that on the renewal of usurious notes the principal appears as the indorser, or that there are additional or different makers or indorsers than said principal, or that notes are surrendered for drafts, will not relieve any of such notes or drafts of the taint of usury, where there is in fact the same principal through all the transactions.

**Demurrer to Evidence—Jury Instructed to Find Subject to.**

The court may instruct the jury to find a verdict for a sum certain sued for, subject to the opinion of the court on a demurrer to the evidence.

**Recovery on Usurious Contract—Statute Regulating.**

In view of Code, § 2821, providing for the recovery of the principal only, where a written usurious contract is sued on, and no plea of usury is made, and also providing how the question of usury may be litigated, a recovery may be had for the amount due him by a plaintiff suing on a usurious contract, where usury is pleaded.

---

*See monographic note on "Bills of Exception" appended to Stoneman *v.* Com., 25 Gratt. 887 (Va. Rep. Anno.); monographic note on "Demurrer to the Evidence," Va. Rep. Anno.; foot-note to Trout *v.* Va. & Tenn. R. R. Co., 23 Gratt. 619 (Va. Rep. Anno.).

Appeal from corporation court of Lynchburg.

Action by the Traders' Bank against Mathews' administrator. From judgment for plaintiff, defendant appeals.     Reversed.

*T. J. & F. S. Kirkpatrick* and *J. E. Enmunds*, for appellant.

*J. E. Hughes*, for appellee.

BUCHANAN, J., delivered the opinion of the court.

Upon the trial of this cause the following bill of exceptions was taken :

"Be it remembered that upon the trial of this cause, after the jury was sworn, and while the case was in progress of trial, the defendant sought to show by the witnesses that there was usury charged upon the notes taken up by the drafts, and also upon the renewals and extensions of the said notes, whether there had been any changes in the makers or indorsers or not in the various renewals.     But the court ruled that the inquiry as to the usury must be limited to the notes in statements 'A' and 'B' taken in by the drafts, and to any notes for which these are renewals in the same form, and so on back to the original notes, or to the time, if any, of any change as to the maker or indorsers.     And the inquiry as to usury in any series of notes could not go back further than to such change ; the court being of opinion that in the progress of renewals such changes as to maker or indorsers constituted different contracts, and new and different considerations other than and different from that which formed the consideration of the drafts sued on, so as to prevent the defendants availing themselves of any usury therein in this suit.     But for the purpose only of allowing the defendants to get into the record the amount of total interest which would be affected by such usury, if any, the court permitted the defendant's witnesses to testify as to the total inter-

est paid by Rose to the plaintiff on all his transactions with
the bank, and as to the total interest paid by him to plain-
tiff on the notes taken up by the drafts sued on, and on the
preceding notes back to the originals, to which defendants
Rose and Mathews excepted, and prayed the court to sign and
seal this, their first bill of exceptions, which is done accord-
ingly.''

The action of the court in refusing to admit the evidence
sought to be introduced by the defendant in support of the plea
of usury is assigned as error.

It is claimed by the plaintiff bank that the bill of exceptions
does not show clearly that there had been in fact any change in
the makers of indorsers of the notes for which, or in payment
of which, the drafts sued on were given, and for that reason the
assignment of error cannot be considered by this court under
the settled rule that the bill of exceptions must show affirmatively
a relevancy of the excluded evidence, and that, as there is no
reference in this bill of exceptions to any other bill, the court
cannot look to any other part of the record to supply that
omission.

While the rule is as claimed, that one bill of exceptions can-
not be looked to in aid of another unless it is expressly referred
to, yet there are exceptions to the rule.    In Perkins' Adm'r
v. Hankiws' Adm'r, 9 Grat. 649, 659, it was said, Judge Mon-
cure delivering the opinion of the court, that the reason of that
rule does not apply, and therefore the rule does not extend to a
case in which one of the bills of exception contains all the evi-
dence which was given on the trial, and was taken after all the
evidence had been submitted to the jury.

Bill of exceptions No. 3 taken in this case, after setting out the
evidence, states that:    ''This being all the evidence introduced
on the trial, the defendant Richard Matthews   *   *   *   de-
murred to the evidence.''    From this bill of exceptions it clearly
appears that it contains all the evidence that was introduced

upon the trial (except that offered as to the insanity of Mathews, which was withdrawn), and that it was taken at the close of the trial. This seems to bring this case clearly within the exception to the general rule. See, also, 4 Minor, Inst. (3d Ed.) 916; Olinger *v.* Shepherd, 12 Grat. 475.

The evidence set out in the third bill of exceptions shows that one of the notes for which the drafts sued on were given was in its inception made by R. W. Rose and indorsed by William L. Lyle, and that upon a renewal of that note R. W. Rose and J. C. Rose were the makers and W. M. Lyle the indorser. It further tends to show that all the notes held by the bank for the payment or security of which the drafts were given were discounted originally by the bank for R. W. Rose, and that he was treated in the whole transaction as the principal debtor, whether the notes were made by him alone, by himself and another, or indorsed by him, and that they were discounted at a greater rate of interest than is allowed by law.

The illegal consideration may be purged, as was said by this court in Drake's Ex'r *v.* Chandler, 18 Grat. 909, 910, where third persons, strangers in whole or in part to the original security, intervene, and for motives peculiar to themselves, and unaffected by the usurious consideration, supersede it or supplant it by a new obligation of their own creation, although one of the parties to the original security was a surety upon the new obligation. A number of cases are cited and commented upon in that case to show how the illegal consideration may be purged. It would be difficult, if not impossible, to lay down a rule upon the subject applicable to all cases, for the usurer, like other violaters of law, resorts to various devices to escape the penalty of his illegal acts. The courts look to the substance; and not to the form, of the new security to ascertain its real character.

The mere change of the maker or indorser in the renewal of a usurious note does not purge it of usury where the original

debtor continues to be in fact the real debtor, although in form a surety or indorser.

The evidence offered by the defendant and rejected by the court was clearly admissible.

The drafts sued on were made by R. W. Rose, the party for whose benefit the notes were discounted, payable to the plaintiff bank, the original lender, and based upon the same original consideration. It is true that the defendant Mathews indorsed the drafts for a consideration paid him by Rose, but he did not assume the payment of the debt, nor was he bound for it except as indorser. It is also true that the plaintiff surrendered the notes to Rose upon the delivery of the drafts. These acts, however, did not purge the transaction of its usury, and the court erred in so holding upon the demurrer to the evidence.

When the defendant Mathews demurred to the evidence the court instructed the jury to find against him the whole amount specified in the drafts sued on, subject to the judgment of the court. The giving of this instruction is assigned as error.

It is true, as contended by the defendant's counsel, that under our practice the court, in giving instructions to the jury, is rigorously confined to an exposition of the law of the case, and that it cannot comment upon the weight of the evidence, nor direct the jury when they are passing upon the whole case what verdict they must find. Neither can the court, where there is a demurrer to the evidence, if the sum sued for sounds purely in damages, instruct them what amount of damages they must find, but they must ascertain the amount according to their own judgment, from the evidence, in accordance with the rules of law for assessing damages in such cases. But in a case like this, where the amount sued for is a sum certain, and the defendant demurs to the evidence, the court has the right to instruct the jury to find a verdict for that sum, subject to the opinion of the court upon the demurrer to the evidence.

The contention of the defendant that there can be no recovery

on a contract made for the loan of money at a greater rate of interest than is allowed by law, is without merit. It may be true, as a rule, that where a promise is based upon two considerations, one legal and the other illegal, there can be no recovery upon the promise itself, and that the right to recover to the extent that the consideration is valid is independent of the contract. But this rule has no application to contracts based in part upon a usurious consideration. Section 2821 of the Code expressly provides that where the contract sued on is in writing, and the usurious interest is provided for therein, the court, although there be no plea of usury, shall render judgment for the principal sum only. The same section provides how the question of usury may be litigated in the case, and necessarily implies that the plaintiff shall be entitled to recover in that action whatever sum may be found due him.

The judgment complained of must be reversed, the verdict set aside, and the cause remanded to the corporation court for a new trial, to be there proceeded with in accordance with the views expressed in this opinion.