FIRST NATIONAL BANK OF RAPID CITY V. MCCARTHY *et al.*

1. On appeal in equity, where the court submitted certain issues to the jury, the conduct of counsel, the charge of the court, and the conduct of the jury are not subject to review, the findings being merely advisory.

2. Though findings of the trial court on disputed questions of fact in an equitable action are always presumptively right, it is nevertheless the duty of the court on appeal, in cases tried by court, to review the evidence whenever the question of its sufficiency is properly presented, to ascertain whether or not there is a clear preponderance against the finding.

3. In an action on a note and to foreclose a mortgage securing the same, evidence considered, and held insufficient to support a finding that the note was not a renewal of a former note, which was tainted with usury.

4. A note executed as a renewal of a note providing for usurious interest is itself tainted with usury.

5. In an action in a state court on a usurious note given to a national bank the amount of recovery depends on the law of congress relating to usurious contracts of national banks, as interpreted by the United States Supreme Court.

6. The only penalty necessarily attached to the exaction of illegal interest by a national bank is the forfeiture of all interest to be paid under the contract.

7. In an action by a national bank upon a usurious contract the statute of limitations applies to a counterclaim for the usurious interest.

8. Where the mortgagee has merely a lien on the mortgaged property, he cannot, so long as the relation of mortgagor and mortgagee exists, acquire, as against the mortgagor, title to the property by means of a tax sale, where, under the terms of the mortgage, he is permitted to pay the taxes assessed against the land, and add the amount so paid to his claim.

9. In an action to foreclose a mortgage, which provided that, if the mortgagor did not pay the taxes the mortgagee might do so, and add the amount to the mortgage debt, it will be conclusively presumed that money paid by the mortgagee to purchase the property at tax sale was paid to redeem and protect the property.

10. It being the mortgagor's duty to pay the taxes, he was chargeable with the additional burden resulting from interest, penalties, and costs caused by delay in making payment.

11. Cost of procuring and recording tax deed was chargeable to the mortgagee.

12. The purchase at tax sale did not operate to invalidate the lien of the mortgage.

HANEY, J., dissenting.

(Opinion filed June 8, 1904.)

Appeal from circuit court, Pennington county; Hon. LEVI McGEE, Judge.

Action by the First National Bank of Rapid City, S. D., against Patrick B. McCarthy and others, to foreclose a real estate mortgage. From a judgment for plaintiff, defendants Patrick B. McCarthy and another alone appeal. Modified.

*Charles W. Brown, Edmund Smith* and *Ivan W. Goodner,* for appellants.

As between the parties to a usurious loan, the taint of usury attaches to all subsequent contracts and securities however remote, substituted for or given in renewal of the original debt; and the debtor, until the usurious element is expunged, has the same right of defending against the last substitute or renewal as if it were the original contract. 27 A. & E. Ency. Law 967-968; §§ 308-311, Webb on Usury; Taylor v. Morris, 22 N. J. Eq. 606; Boyd v. Engelbrecht, 36 N. J. Eq. 612; Bank v. Hoagland, 7 Fed. 159; Brown v. Bank, 169 U. S. 416; Snyder v. Bank, 21 S. W. 1050; Kendall v. Crouch, 11 S. W. 587; First Nat. Bank v. Plankinton, 27 Wis. 177; Mathews' Adm'r v. Traders Bank, 27 S. E. 609; Walker v. Bank of Washington, 3 How. 62; Pickett v. Merchants Nat. Bank, 32 Ark. 346; Tuthill v. Davis, 20 Johns. 285; Reed v. Smith, 9 Cowen 647; Steele v. Whipple, 21 Wend. 103; Bridge v. Hubbard, 15 Mass. 96; Campbell v. McHarg, 9 Ia. 354; Holden v. Cosgrow, 12 Gray 216; Burlin v. Wilson, 38 How. Pr. 288; Bank v. Lewis, 75 N. Y. 516; Hammond v. Hopping, 13 Wend. 506; Levey v. Allien, 25 N. Y. S.

352; Lukens v. Hazlett, 35 N. W. 265; McGee v. Long, 9 S. E. 1107; Robbins v. Muldrow, 18 Pac. 64; Nelson v. Hurford, 9 N. W. 648; Knox v. Williams, 39 N. W. 786; Doyle v. Holland, 57 N. W. 989; Bank v. Orchard, 58 N. W. 144; Bank v. Barnett, 70 N. W. 937; McDonald v. Aufdergarden, 59 N. W. 762; Bank v. Oliver, 76 N. W. 449; Hoeler v. Dodge, 47 N W. 913.

To purge a contract of usury, the usurious element must be abandoned, the usury already paid must be returned to the debtor, or credited upon the valid portion of the debt, and a new contract made, free from all taint of usury. 27 A. & E. Ency. Law 964-965; §§ 481-485, Webb on Usury; Taylor v. Morris, 22 N. J. Eq. 608; Trusdell v. Dowden, 47 N. J. Eq. 396; Levey v. Allien, 25 N. Y. S. 352; Phillips v. Columbus City Bldg. Ass., (Ia.) 6 N. W. 121; Sheldon v. Haxtun, 91 N. Y. 125; DeWolf v. Johnson, 10 Wheat. 366, L. Ed. 343; Early v. Mahon, 19 Jons. 147; Kilbourn v. Bradley, 3 Day 356, 3 Am. Dec. 273; Bank of Monroe v. Strong, Clarke's Ch., 76; Miller v. Hull, 4 Denio 105; McClure v. Williams, 7 Vt. 210; Jacobsen v. Bradley, 1 N. Y. S. 666; Howard v. Johnson, (Ga.) 18 S. E. 132.

A renewal note given to a national bank, in so far as it includes, as a part of the new principal, usurious interest previously charged, is without consideration. McGhee v. First Nat. Bank, 58 N. W. 537.

Usury in a promissory note, given to a national bank, works a forfeiture of the interest accruing after as well as before the maturity of the note, and destroys its interest bearing power. §§ 5197-5198, Rev. St. U. S.; §§ 3721 3723, Compiled Laws; Session Laws of 1889, p. 106; Danforth v. Nat. State Bank, (C. C. A.) 48 Fed. 271, 17 L. R. A. 622; Farmers & Me

chanics Bank v. Hoagland, 7 Fed. 159; First Nat. Bank v. Stauffer, 1 Fed. 187; Barnet v. Muncie Nat. Bank, 98 U. S. 555, L. Ed. 212; First Nat. Bank v. Childs, 133 Mass. 248; 43 Am. Rep. 509; Snyder v. Mt. Sterling Nat. Bank, (Ky.) 21 S. W. 1050; Pickett v. Merchants Nat. Bank, supra; Lucas v. Government Nat. Bank, 78 Pa. St. 228, 21 Am. Rep. 17; Shunk v. First Nat. Bank of Galion, 22 Ohio St. 508; McGhee v. First Nat Bank, (Neb.) 58 N. W. 537; Guthrie v. Reid, 107 Pa. St. 251, 3 Nat. Bank Cas 751; Brown v. Second Nat. Bank, 72 Pa. St. 209, 1 Nat. Bank Cas. 849; Alves v. Henderson Nat. Bank, 89 Ky. 126, 9 S. W. 504; § 289, Webb on Usury; 16 A. & E. Ency. Law, (1st Ed.) 174-175.

The limitation of two years provided by section 5198, Rev. St. U. S., for the recovery of a penalty or forfeiture for usury, does not apply to the defense of usury to defeat the recovery of interest; statutes of limitation affect actions only, not defenses. First Nat. Bank v. Childs, 130 Mass. 519; Same v. Same, 133 Mass. 248; Pickett v. Merchants Nat. Bank, (Ark.) 2 Nat. Bank Cas. 209; Danforth v. Nat. State Bank, (C. C. A.) 48 Fed. 271; Farmers & Mechanics Bank v. Hoagland, 7 Fed. 159; McBroom v. Scottish M. & L. I. Co., 153 U. S. 318; 13 A. & E. Ency. Law, (1st Ed.) 691, 16 same 178; 19 A. & E. Ency. Law, (2d Ed.) 153, 21 same 393; Exeter Nat. Bank v. Orchard, (Neb.) 58 N. W. 144; Haseltine v. Central Nat. Bank, (Mo.) 56 S. W. 895.

When the maker of a usurious note, given to a national bank, makes a payment thereon without any direction as to its application, it cannot be applied to the unlawful and forfeited interest, but must be credited upon the principal; and the burden of proof is upon the bank to show such direction.

Danforth v. Nat. State Bank, 48 Fed. 271; Snyder v. Mt. Sterling Nat. Bank, (Ky.) 21 S. W. 1050; Bank of Cadiz v. Slemmons, 34 O. St. 142, 32 Am. Rep. 364; Nat State Bank v. Brainard, 16 N. Y. S. 123; First Nat. Bank v. Miltonberger, (Neb.) 51 N. W. 332; Exeter Nat. Bank v. Orchard, (Neb.) 58 N. W. 144; Tomblin v. Higgins, (Neb.) 73 N W. 461, 78 N. W. 620; Pickett v. Merchants Nat. Bank, supra; First Nat. Bank v. Turner, (Kans.) 42 Pac. 936; Citizens' Nat. Bank v. Forman, (Ky.) 63 S. W. 454; Hall v. First Nat. Bank, (Neb.) 46 N. W. 150; §§ 214-217. Webb on Usury; 21 A. & E. Ency. Law, (2d Ed.) 390.

The provision of the mortgage relative to the right of the mortgagee to pay the taxes, does not entitle the plaintiff to add to the mortgage debt, in this way, the amount paid by it in purchasing a tax title or tax sale certificate. Such a pur chase is not a payment of taxes, but a purchase of a new lien upon the estate independent of the mortgage. 2 Jones on Mortgages, § 1080; Williams v. Townsend, 31 N. Y. 411.

*Martin & Mason* and *Fowler & Whitfield*, for respondents.

The defense of usury must not only be distinctly set up in the pleadings, but must be proved as charged; and if the defendant fails to prove the usurious contract in the way and manner it is alleged, he must fail. Hannas v. Hawk, 24 N. J. Equity 126; Lane v. Losse, 2 Barbara 58; Hettield v. Newton, 3 Sandf. Ch. 368; Taylor v. Morris, 22 N. J. Equity 611; See note, Cheney v. Davis, 5 L. R. A. 465-6; Berdan v. Trustees' School District 38, 47 N. J., 74 N. J. Equity 18.

We do not concede that defendants have correctly stated the rule as to usury in transactions between different parties, but contend that the line is more closely drawn. Shinkle v.

First Nat. Bank, 22 Ohio State 516; Lealos v. Union First Nat. Bank, 81 N. W. 56 (N. D.); Timber Lake v. First Nat. Bank, 43 Fed. 231, (Miss.); Bank of Concordia v. Rowley, 34 Pac. 1049 (Kas.); Higley v. First Nat. Bank, 26 Ohio State 75; Tenney v. Porter, 33 S. W. 211.

The statute of limitations applies as well to the defense of usury as to actions brought to recovery for usury exacted. Davis v. Converse, 35 Vt. 506; Carter v. Moses, 39 Ill. 543; Brown v. Second Nat. Bank, 72 Pa. State 209; 2 Waits Actions and Defences 255; 1 Waits Practice 63; Wood on Limitations 110. (See notes 108 and 111).

If appellants' contention in regard to usury were sustained, assuming that the original debt was $4,000, they would be entitled to a reduction for the amount actually paid by them, and not for any payments whether general or interest payments, made by other parties; and such reduction would not affect the tax payment. Farmers and Merchants S. Co. v. Bazore, 54 S. W. 339; Bank v. Dingham, 28 Am. Rep. 480; Flamery v. Three Forks Bank, 52 S. W. 847; Roberts v. Coffin, 53 S. W. 597; Leolos v. Union National Bank, 81 N. W. 56; Higley v. First Nat. Bank, 26 Ohio State 141; 27 Am. & Eng. Ency. Law, 1st Ed., 949.

Since there was sufficient evidence to sustain the plaintiff's contention against usury and the question was fairly presented to the jury, the verdict of the jury will not be molested, if there is any evidence to support it. Weiss v. Evans, 13 S. D. 185; Meyers v. Elevator Company, 12 S. D. 172; Walker v. McConnell, 13 S. D. 512; Irving v. Dockstoder, 12 S. D. 312; Witte v. Koppen, 11 S. D. 598; Erickson v. Sophy, 10 S. D. 71; Bennett v. Railroad Co., 8 S. D. 394; Tootle v. Petrie, 8

S. D. 19; Bauder v. Schamber, 7 S. D. 54; Everett v. Klein-hagen, 6 S. D. 221; Baker v. Baker, 2 S. D. 261; Jeansch v. Lewis, 1 S. D. 609.

If the verdict of the jury should be disregarded, still the findings of the court are sufficient without the verdict, to support the judgment, and since the verdict was advisory merely, such judgment will not be molested on this appeal, because based upon conflicting evidence. Hill v. White Min. Co., 90 N. W. 853, 15 S. D. 574; Evanson v Webster, 5 S. D. 266; Feldman v. Trumbower, 64 N. W. 186, 7 S. D. 408; Jasper v. Hazen, 4 N. D.; Randall v. Burke Twp., 4 S D. 337; Axiom Mining Co. v. White, 10 S. D. 198; Brewing v. Minnesota Threshing Co., 12 S. D. 127.

CORSON, P. J. This is an action for the foreclosure of a mortgage, in which usury and certain other defenses were pleaded by the defendants Patrick and Maggie McCarthy, who alone appealed from a judgment in favor of the plaintiff and from an order denying their application for a new trial.

This being an action in equity, triable by the court, its charge in submitting certain issues to a jury, the conduct of counsel in argument before the jury, and the conduct of the jury, are not subject to review. Assignments of error relating thereto demand no consideration. It was wholly within the discretion of the court what, if any, issues should be submitted. The findings of the jury were merely advisory. Upon the court rested the duty and responsibility of determining the facts, and this court must review its decision precisely as it would if no jury had been impaneled. Apland v. Pott, 16 S. D. 185, 92 N. W. 19.

18 S. D.—15

Admitting the execution of the note and mortgage in suit, appellants contend (1) that such note was a renewal of former notes, which were tainted with usury. and that under the law applicable to such a state of facts sufficient payments were shown to substantially extinguish the indebtedness; and (2) that, the plaintiff having attempted to procure a tax title to the mortgaged premises, and not having paid the taxes assessed thereon for the purpose of protecting its security, according to the terms of the mortgage, the circuit court erred in adding such taxes to the sum found to be due the plaintiff.

The first contention rests on the alleged fact that the note in suit was merely a renewal, its sole consideration being a pre-existing indebtedness.   Notwithstanding the rule that findings of a trial court on disputed questions of fact are always presumptively right, and must stand unless the evidence clearly preponderates against them, it is the duty of this court, in cases tried by a court or referee, to review the evidence, whenever the question of its sufficiency is properly presented, for the purpose of ascertaining whether or not there is a clear preponderance against the findings of such court or referee.   Farwell v. Sturgis Water Co.. 10 S. D. 421, 73 N. W. 916; Williams v. Williams, 6 S. D. 284, 61 N. W. 38; Randall v. Burk Township, 4 S. D. 337, 57 N. W. 4.   Regarding the execution of the note in suit the learned circuit court found as follows:  ''That said note of July 22, 1891, for the sum of $5,000, executed and delivered by the defendants Patrick B. McCarthy and Maggie Mc. Carthy to the plaintiff, the First National Bank of Rapid City, South Dakota, was so made, executed, and delivered by said defendants, and was received by said plaintiff, as a new and original indebtedness and obligation, and not as a renewal or

continuation of any prior existing indebtedness or obligation of the said defendants Patrick McCarthy or Maggie McCarthy, or either of them, or any other person, firm, or corporation." This finding clearly conflicts with conceded facts and a fair and reasonable view of the entire evidence. The record contains a copy of the note. It was for $5,000, payable to the order of the plaintiff six months after date, with interest at 12 per cent. per annum, dated July 22, 1891, signed by each of the appellants. The record also contains the copy of a note for $5,000, payable to the order of the plaintiff 12 months after date, with interest at 12 per cent. per annum, dated May 22, 1889, signed by each of the appellants and one Michael McGuire. Plaintiff's president, who had formerly been its cashier, and who was personally acquainted with nearly all of the numerous transactions disclosed by the evidence, testified on cross-examination as follows: "Q. Was the note of July 22, 1891, a renewal of or a substitution of this note of May 22, 1889? A. I don't so regard it.    Q. Did it represent the same indebtedness so far as McCarthy was concerned? A. McCarthy was on the note with these parties for that amount.    Q. If McCarthy and Tighe had not signed any of these notes, this note of July 22, 1891, and May 22, 1889, is the same indebtedness of McCarthy? A. No, sir; it is not the same indebtedness. It is an indebtedness of different parties.    Q. Why do you say it is not the same indebtedness, so far as McCarthy is concerned? A. When two individuals come in there and make a loan, and a third party comes in, and says 'We want to get money to take up this loan, and want to get the other people off, and we want you to let us have the money to pay off this note, and get these other people off,' and in this case we did that, and let McCar-

thy have the money to pay off this note and give this security. Q. When the note of July 22, 1891, was signed by McCarthy and wife, did you pay McCarthy any money—your bank? A. We placed the amount to his credit. The transaction was this: Mr. McCarthy may have drawn— Q. What did he do? Did you pay him any money? Did he get a nickel? A. I don't think the actual cash was handled, but the proceeds of that note were turned to McCarthy's credit, and paid for the other note. Q. Was any money placed to Mr. McCarthy's credit that day on the books of the bank? A. I would have to look. Q: Did he have any account on the books of the bank on that date? A. I will look. What date? Q. July 22, 1891. A. It may not have gone through the actual transaction. Q. It was not in actual money? A. The transaction was just the same. It was not imaginary money. Q. State your best recollection, if you have not McCarthy's account here. Was any credit given to McCarthy at the bank at the time he and his wife signed the note of July 22, 1891, for $5,000? A. I don't remember whether the account was credited on the book or not. Q. At the time the note of May 22, 1889, for $5,000. signed by McCarthy and wife and McGuire, did you pay them any money that day? Did you pay them $5,000 when they signed that note? A. It is not very likely that we made a transaction in which we turned the money out at one window and in at the other." This witness also stated that the same record was made in the bank when a note was "paid in cash" as when it was "paid by a new note." Thus it clearly appears that the indebtedness represented by the note of May 22, 1889, constituted the consideration of the note in suit. Such indebtedness, its amount augmented by interest, reduced by payments, re-

mained when the latter evidence thereof was executed. The transaction on July 22, 1891, did not involve the delivery of any money, and we are unable to discover any competent evidence tending to prove that the parties intended the new note to be regarded as a payment of the old one. The transaction was not unusual. It is easily understood. The bank held the past-due note of May 22, 1889. To avoid carrying past-due paper, and improve its security, the amount remaining unpaid, according to the bank books, was ascertained, and appellants were induced to sign a new note for that amount, securing the same with a mortgage on their homestead, the name of McGuire being omitted from the new note. Nothing more was done; nothing more was intended to be done. The nature of the transaction is to be ascertained from what was said and done by the parties at the time, not from the personal opinions of interested witnesses. The need of accuracy in the use of language and of nice discrimination between facts and conclusions of witnesses, when dealing with such a transaction, is strikingly illustrated by reference to plaintiff's testimony touching certain subsequently executed notes. On July 1, 1896, appellants executed two notes, one for $5,000 and one for $675.50, the aggregate of these sums being the amount shown by the bank's books to be then due on the note in suit. The president of the bank stated: "At the time this Exhibit A [note in suit] was paid or renewed by Exhibit C and Exhibit D [notes of July 1, 1896], Mr. McCarthy was present, but as to whether he figured it up or not I could not say." If the note of July 22, 1891, paid the note of May 22, 1889, then the notes of July 1, 1896, paid the note of July 22, 1891, the indebtedness secured by the mortgage sought to be foreclosed was extinguished, and the

lien of such mortgage no longer exists—a conclusion the plaintiff would certainly not desire to concede. It seems clear to us that both transactions should be regarded as renewals. They were such in fact. If the note of May 22, 1889, was tainted with usury, the note of July 22, 1891, was not purged of such taint, even if the parties at the time intended such result, which does not appear. The promise of a debtor to pay illegal interest, however often repeated, is not in itself sufficient to avoid the consequences of a usurious contract. As the decision of the learned circuit court cannot stand without the support of the finding heretofore quoted, and such finding is against the clear preponderance of the evidence, the judgment appealed from will have to be modified.

It is undisputed that appellant Patrick McCarthy executed and delivered to the bank on August 22, 1887, four promissory notes for $1,000 each, wherein he promised to pay interest thereon at 18 per cent. per annum from date until maturity. At that time the highest lawful rate of interest under the laws of Dakota territory, where such notes were executed, was 12 per cent. per annum (Laws 1887, p. 401, c. 207); hence such notes were usurious. (Rev. St. U. S., §§ 5197, 5198, [U. S. Comp. St. 1901, p. 3493]); and if the indebtedness then contracted continued by means of renewal notes down to the execution of the note of May 22, 1889, and constituted the consideration thereof, the note in suit is tainted with usury, it being, as we have shown, a renewal of the 1889 note. If the note in suit is tainted with usury, the amount, if any, of plaintiff's recovery thereon, depends on the law of Congress relating to usurious contracts of national banks, in the application of which state courts are bound to follow the adjudications of the United

States Supreme Court.   Farmers' Bank v. Oliver, 55 Neb. 774, 76 N. W. 449; Robbins v. Muldrow, 39 Kan. 112, 18 Pac. 64; National Bank of Auburn v. Lewis, 75 N. Y. 516, 31 Am. Rep. 484; Holden v. Cosgrove, 12 Gray 216; Bridge v. Hubbard, 15 Mass. 96, 8 Am. Dec. 86; Steele v. Whipple, 21 Wend. 103; Reed v. Smith, 9 Cow. 647; Tuthill v. Davis, 20 Johns. 285; Mathews' Adm'r v. Traders' Bank, (Va.) 27 S. E. 609; First Nat. Bank v. Plankinton, 27 Wis. 177, 9 Am. Rep. 453; Snyder v. Mt. Sterling Nat. Bank, (Ky.) 21 S. W. 1050; Brown v. Marion Nat. Bank, 169 U. S. 416, 18 Sup. Ct. 390, 42 L. Ed. 801; Farmers' & Mechanics' Bank v. Hoagland, (C. C.) 7 Fed. 159; Boyd v. Engelbrecht, 36 N. J. Eq. 612; Taylor v. Morris, 22 N. J. Eq. 606; 27 A. & E. Ency. Law 967, 968. The only penalty necessarily attaching to the exaction of illegal interest under the banking law of the United States is the forfeiture of all interest to be paid under the contract. The interest paid, however, may, in certain cases, be counterclaimed as against the amount due upon the instrument if the action is brought within the time limited by statute; and the statute of limitations applies as well to the defense as to actions brought to recover for usury exacted. Faison v. Grandy, 128 N. C. 438, 38 S. E. 897, 83 Am. St. Rep. 693; Harrell v. Blount, 112 Ga. 711, 38 S. E. 56; First Nat. Bank v. McInturff, (Kan. App.) 43 Pac. 839; First Nat. Bank v. Turner, (Kan. App.) 42 Pac. 936; Walsh v. Mayer, 111 U. S. 31, 4 Sup. Ct. 260, 28 L. Ed. 338; Brown v. Second Nat. Bank, 72 Pa. 209; Carter v. Moses, 39 Ill. 543; Davis v. Converse, 35 Vt. 506. In the case at bar all the payments of interest were clearly barred by the statute of limitations, and, unless payments were made by the defendants upon the principal, and properly applied upon the

same, such payments cannot inure to the benefit of the defendants in this action.

This brings us to a consideration of the second part of the proposition of appellants—that the debt was extinguished by reason of these payments. On the trial the following question, among others, was submitted to the jury: ''Q. No. 3. What amount, if any, of payments was made by the defendants Patrick B. McCarthy and Maggie McCarthy, or either of them, as general payments upon the said indebtedness, without any direction as to the application thereof? A. Not any.'' The court, in its findings of fact, referring to the verdict of the jury, says: ''The court hereby approves said verdict, and the findings of the jury therein, and adopts the same, and hereby embodies the same in these findings of the court as findings of fact number 11.'' It will thus be seen that there was a finding of the jury that no money was paid as general payments upon said indebtedness, and this finding is fully and distinctly approved by and made a part of the findings of the court. Unless, therefore, there was a preponderance of the evidence against these findings, they are conclusive upon this court. There was some conflict in the evidence in regard to some of the payments made by McCarthy, but, as we understand the evidence, McCarthy admitted that a very large number of the alleged payments made were understood by him to be made as interest, and not upon the principal. It clearly appears from Mr. Halley's testimony that no payments made by Mr. McCarthy were made to be applied upon his indebtedness generally, except such as were to be applied upon some special note held by the bank not connected with the $4,000 loan. It further appears from the evidence that there were many transactions

between the bank and McCarthy between the years 1886 and 1892, and that numerous small notes were given by McCarthy, and subsequently paid by him; but there certainly is no preponderance of evidence in favor of McCarthy's theory that he paid large sums into the bank from time to time, to be applied generally upon his indebtedness, and, considering the fact that he was at all times in arrears with his interest, it is not reasonable to suppose that payments made by McCarthy were intended to be applied upon the principal, or that Mr. Halley, as the cashier of the bank, understood that such payments were to be applied thereon, so long as there was overdue interest unpaid. After a careful review of the evidence upon this question, we are unable to say that there is any preponderance of evidence in favor of the defendants as against the findings of the jury and court, and the plaintiff is therefore entitled to recover the original loan of $4,000, made in 1887.

It is further contended that, the plaintiff having attempted to procure a tax title to the mortgaged premises, and having paid taxes assessed thereon for the purpose of protecting its security according to the terms of the mortgage, the circuit court erred in adding such taxes to the sum found to be due the plaintiff. The mortgage in suit was in the usual form of a mortgage deed, and contained the usual clause with reference to the payment of taxes upon the mortgaged premises, providing, among other things, that the mortgagors should pay said taxes before the same became delinquent, and, if they neglected so to do, the mortgagee might pay the same, and add the amount of such payment to the mortgage debt, and said mortgage should stand as security for the repayment thereof, with interest at the rate of 12 per cent. per annum until paid. Con-

cerning the taxes the court made the following finding: "That the defendants Patrick B. McCarthy and Maggie McCarthy further failed to comply with the terms of said promissory notes dated February 17, 1896, and of said mortgage, by failing and neglecting to pay the taxes legally assessed upon said mortgaged premises for the years 1890 to 1899, both inclusive; and that heretofore, and on March 23, 1898, the plaintiff paid the taxes so assessed and delinquent and unpaid upon said premises, for the purpose of protecting its mortgage security therein, for the year 1890 in the sum of $174.20, for the year 1891 in the sum of $189.20, for the year 1892 in the sum of $208.11, for the year 1893 in the sum $157.01, for the year 1894 in the sum of $141.71, for the year 1895 in the sum of $133.47, for the year 1896 in the sum of $151.13, and for the year 1897 in the sum of $142.18; and that on May 26, 1899, the plaintiff also paid the taxes on said mortgaged premises, for the purpose of protecting its mortgaged security therein, in the sum of $99.73 for the year 1898, and on February 16, 1900, in the sum of $43.64 for the first half of the taxes thereon for the year 1899, and on September 19, 1900, plaintiff likewise paid $43.63 for the last half of the taxes on said mortgaged premises for the year 1899—all of which payments were made for the purpose of protecting the plaintiff's mortgaged security." As we understand the record, it was conclusively shown that the payment by the plaintiff on March 23, 1898, referred to in this finding, was in fact a purchase by the plaintiff of certain tax certificates held by the county, upon which a tax deed to the mortgaged premises was procured by the plaintiff on June 11, 1898; that on June 20, 1898, the plaintiff commenced an action in the nature of ejectment to recover possession of the premises, alleg-

ing that it was seized thereof in fee; that the appellants, defendants in that action, appeared and answered; and that on October 4, 1900, the plaintiff, without notice, procured an order dismissing such action without prejudice. It was further conclusively shown that on a former trial of the present action judgment was rendered in favor of the plaintiff on May 4, 1897; that on June 19, 1897, the mortgaged premises were sold on execution issued upon such judgment, and purchased by the plaintiff; that an order granting a new trial was affirmed by this court on July 11, 1900 (Bank v. McCarthy, 13 S. D. 356, 83 N. W. 423); and that after the remittitur was sent down, the plaintiff served a supplemental complaint, wherein it alleged the payment of these taxes for the purpose of protecting its security under the terms of the mortgage. As the bank paid no taxes prior to the commencement of this action, and caused a tax deed to issue, it certainly had no intention of acting under the clause in the mortgage relating to taxes until after a new trial was ordered and affirmed on appeal, as heretofore stated. Its evident purpose was to secure title to and possession of the mortgaged premises as speedily as possible. But that is not material. The question is not what motives prompted the plaintiff's conduct, but what was the legal effect of such conduct on the rights of the parties. While the authorities are conflicting upon the subject, we believe the rule should be, in this state, where the mortgagee has merely a lien on the mortgaged property, that, so long as the relation of mortgagor and mortgagee exists, the latter cannot, as against the former, acquire title to the property by means of a tax sale, where, under the terms of the mortgage, he is permitted to pay the taxes assessed against the land, and add the amount so paid to his

claim.   Finlayson v. Peterson, 11 N. D. 45, 89 N. W. 855. This conclusion is in harmony with the principles announced by this court in Safe Deposit & Trust Co. v. Wickhem, 9 S. D. 341, 69 N. W. 14, 62 Am. St. Rep. 873; Id., 9 S. D. 515, 70 N. W. 654. Under the rule we have stated, in an action by the plaintiff against the appellants for possession of the property, founded on its tax title, it would be conclusively presumed that its disbursements on account of taxes were made to redeem and protect the property.   No reason exists why the same presumption should not prevail in this action.   It was appellants' duty to pay the taxes when due.   The plaintiff had the option to pay at any time after they became delinquent, or not at all.   The additional burden resulting from delay in interest, penalties and costs must be borne by the appellants, if they retain the property.   Of course, the plaintiff cannot charge the appellants with sums not actually and necessarily expended. As the tax deed was inoperative as to the appellants, the cost of its procurement and recording should not be allowed to the plaintiff.   While the plaintiff was not required to take care of the taxes before it did, while it cannot be held responsible for interest, penalties, and costs resulting from the failure of both parties to pay promptly, it is entitled to recover only such sums as were necessary to protect its security at the time of making its disbursements; and this, we understand, is all that was allowed by the court below.   The attempt by plaintiff to obtain possession of the property by means of the ejectment action pending the proceedings to foreclose its mortgage may not have been commendable conduct, but it did appellants no harm beyond the expense of appearing and filing their answer.   Such attempt certainly did not operate to invalidate the lien of the

mortgage, any more than would the commencement and dis-
missal of an action to obtain possession of mortgaged property
where no tax title was involved.

The facts in the case having been fully found by the trial
court, we do not deem it necessary that another trial be had.
It is therefore ordered that the judgment of the court below be
modified by striking therefrom the amount recovered upon the
note in excess of $4,000, and that a judgment be entered by the
circuit court in favor of the plaintiff for the sum of $4,000, the
amount originally loaned by the plaintiff, and also for all taxes
paid as found by the circuit court, with interest thereon to the
date of the judgment, and that the mortgaged premises be sold
to satisfy the same in the manner provided by law; and the judg-
ment, when so modified, is affirmed. It is further ordered that,
as the judgment of the court below is modified, neither party
will recover of the other any costs on this appeal.

HANEY, J., (dissenting.) The judgment below should be
reversed, and a new trial ordered.