SCRIVEN, Respondent, v. WINTERSTEEN, Appellant
(12 N. W.2d 371.)

(File No. 8634. Opinion filed December 16, 1943.)

**Caldwell & Burns** and **Roy D. Burns,** all of Sioux Falls, for Appellant.

No appearance for Respondent.

SMITH, J.   Plaintiff instituted this action to secure an accounting of the income received, and disbursements made, by defendant while acting for plaintiff in developing, manufacturing, promoting and selling a patented bedside table. Defendant counterclaimed for damages for breach of contract.   The resulting findings, conclusions and judgment were adverse to defendant and he has appealed.   We have not had the benefit of a brief on plaintiff's behalf.

An extended statement of facts will serve no useful purpose.   Underlying contracts between the owners of the patent placed a value thereon of $100,000, authorized the sale of units of ownership of $100 each to raise capital for the manufacture and sale of the patented article, and licensed plaintiff to manufacture and sell the article.   Plaintiff's efforts in that direction eventually resulted in the making of three successive contracts with defendant.   The contracts constituted defendant as the general manager of plaintiff's business, invested him with authority, fixed his compensation and obligated him to finance the business. Under the agreements defendant was to be allowed his personal expenses, but was required to accept units in repayment of sums advanced to "properly manufacture, or have manufactured and marketed the said patented articles * * *".   In the course of the business gross disbursements aggregated over $23,000 and the gross income aggregated over $8,000.   All of these transactions were handled through defendant's personal checking account.   This unbusinesslike practice gave birth to misunderstandings between the parties and this litigation arose.   Three propositions are presented for our consideration.

The first proposition deals with the sufficiency of

the evidence to support a particular finding. Before defendant contracted to accept units in payment of certain advances, he had acquired fifty units in the patent from plaintiff. Defendant testified that forty-five of these units were assigned to him as a bonus for continuing to manage the business. Notwithstanding the fact that there appears opposite the figure $4,500 on the subscription list, or agreement dealing with these forty-five units, the abbreviation "contrib", and the testimony shows without dispute that plaintiff placed it there at the time the subscription was signed by defendant, and that plaintiff testified under cross-examination that these units were contributed to defendant in consideration of his continuing to finance the business, the trial court found that defendant was obligated to pay $4,500 for these units. The principal support for this finding appears in a carbon copy of a receipt introduced by plaintiff. The significant portion of this receipt is made up of words added thereto by pencil. There is no proof that defendant received and retained an exact copy of the exhibited receipt. We are of the opinion that the finding is against the clear weight of the evidence and therefore, under the applicable well-settled rule, it cannot stand.

■ Secondly, through a tabulation of the court's several findings, defendant seeks to persuade us that the findings cannot be reconciled and that the conclusions erected thereon require defendant to accept units in payment of funds advanced to defray his personal expenses contrary to the terms of the controlling contracts. We do not deal with the argument in detail as it may not arise upon a new trial. It is apparent that the error, if error there be, is in accountancy rather than in the interpretation of the contracts. We content ourselves with observing that defendant's argument among other things is predicated upon the assumption that the entire income from sales was subsequently used in discharging the expenses of the business. That under a proper and sensible interpretation of contracts this income was available for that purpose, we do not doubt. The argument, however, is made upon the findings, and for aught that we

can learn therefrom, a portion of the income may have been received after defendant had discharged all the claims against the business from his personal funds. In our opinion, under the terms of the contract any income so subsequently received or held by defendant could only be offset against the sum of his commissions and personal expenses, and could not be offset against money theretofore committed to the business through advances made to pay the cost of manufacturing and marketing of the table. Because the propriety of the entry defendant has made dealing with this item of gross income is not demonstrable from the findings, we are unable to judge the accuracy of his accountancy and, therefore, the accuracy of the conclusion he urges upon us.

The third proposition argued by defendant is that he was wrongfully discharged. It is without merit. An employment or agency may be terminated by the employer for any willful breach of duty by the employee or agent. SDC 17.0404; 2 Am. Jur. 47, § 51. We think we need consider only a single phase of defendant's conduct. Manifestly, the commingling of the employer's funds with his own constituted such a breach of duty. Attempt is made to justify this conduct by pointing to the fact that the third contract omitted a provision contained in the prior contract requiring the deposit of such funds in a particular bank. The omission is without significance here. To concede that the contracts contemplated absolute control by defendant of the funds committed to the business, a point we need not decide, is not to say that defendant was justified in commingling those funds with his private funds. This the defendant continued to do after repeated complaints by plaintiff.

For the error pointed out in connection with the first proposition discussed, the judgment of the trial court is reversed.

All the Judges concur.