PFÜTZENREUTER, Appellant v. PFÜTZENREUTER,
Respondent

(77 N.W.2d 563)

(File No. 9527.   Opinion filed June 19, 1956)

**D. M. Joyce, C. W. Hyde,** Aberdeen, for Plaintiff and
Appellant.

**Elmer Thurow,** Aberdeen, for Defendant and Respondent.

RUDOLPH, J. Plaintiff, the wife, brought this action for a divorce. Defendant filed a cross-complaint seeking divorce. The trial court denied a divorce to either and plaintiff has appealed.

The trial court determined that plaintiff had failed to establish facts sufficient to constitute cause for divorce either on the ground of extreme cruelty or habitual intemperance.

■ The question presented by this record is whethei the clear preponderance of the evidence is against the findings and judgment of the trial court. If it is, it is the duty of this court to set the judgment aside. First Nat. Bank of Rapid City v. McCarthy, 18 S.D. 218, 100 N.W. 14; Schmidt v. Norbeck, 45 S.D. 557, 189 N.W. 524; Scriven v. Wintersteen, 69 S.D. 515, 12 N.W.2d 371.

■ Extreme cruelty as a ground for divorce is defined by SDC 14.0708, as follows: "Extreme cruelty is the infliction of grievous bodily injury or grievous mental suffering upon the other, by one party to the marriage." Habitual intemperance is that degree of intemperance from the use of intoxicating drinks which disqualifies the person a great portion of the time from properly attending to business, or which would reasonably inflict a course of great mental anguish upon the innocent party." Under SDC 14.0712 habitual intemperance must continue for one year before it is a ground for divorce. Under the statutes the infliction of grievous mental suffering constitutes extreme cruelty, and intemperance, for a period of one year, which reasonably inflicts a course of great mental anguish, constitutes habitual intemperance. We conclude, therefore, that intemperance if in a degree which would reasonably inflict grievous mental anguish upon the innocent party amounts to extreme cruelty as defined above, provided the intemperance continues for a year or more.

It follows that under the facts presented and under these statutes nomenclature becomes unimportant. The position of appellant is that the great weight of the evidence

establishes that the intemperance of the defendant was to a degree which reasonably inflicted a course of great mental anguish upon her. Whether such alleged action is denominated extreme cruelty or habitual intemperance is unimportant in this case. The cause for divorce is established if the great weight of the evidence is as claimed by appellant.

Construing identical statutes the Idaho court in the case of De Cloedt v. De Cloedt, 24 Idaho 277, 133 P. 664, at page 666, said: "Under the statute it is clear that habitual intemperance means that degree of intemperance which occasions and inflicts great mental anguish upon the innocent party. The statute defining habitual drunkenness does not mean that a person would have to be drunk all of the time, neither does it provide that he shall be incapacitated from pursuing his usual labors during any particular hours or any time, but it does mean one who has a fixed habit of frequently getting drunk, and that such drunkenness causes the innocent party to suffer great mental anguish and suffering. The statute does not provide that the person shall be generally drunk, or that he is drunk more hours than he is sober. It is sufficient that he have the habit and that the habit is firmly fixed upon him, that he gets drunk with recurring frequence, periodically, or that he is unable to resist when opportunity and tempation is presented."

These parties were married in February, 1946. Plaintiff had a son eleven years old who was adopted by defendant. Plaintiff did not know defendant drank prior to their marriage. Plaintiff testified that shortly after they were married defendant became drunk and that he continued drinking heavily throughout their married life and was drunk innumerable times; that when she would remonstrate he would tell her "if I didn't want to live there I could get the hell out," and that he called her vile names. She further testified that he would come home so drunk he was unable to undress; that she would have to sit in a chair the entire night and that he would wet himself and the bed, and vomit in the bathroom and bedroom. She would clean up after him. Further that he kept liquor at different places around the farm and would drink while doing his work; that he was arrested for drunkenness, had serious accidents with

the truck, and was thereafter unable to obtain insurance covering the truck in his name. Plaintiff also testified that because of defendant's acts she became ill and has been under the care of a doctor for some time. The testimony of the plaintiff was to a large extent corroborated by the son.

The weight of plaintiff's testimony of course is to be determined by the trial court. We have set forth the brief resume of this testimony to furnish a background for testimony by defendant. We quote a portion of defendant's testimony.

"Q. Oh, you did have liquor on the farm, where did you keep it? A. In the house or barn, where ever I was working.

"Q. On the machinery? A. Very seldom.

"Q. You had some on the machinery? A. Yes. Occasionally.

"Q. You kept it in the field, didn't you? A. No.

"Q. Did you keep it hid near a school house? A. I don't recall that. I might have when I was farming.

"Q. You drank while you were operating farm machinery, didn't you? A. Very seldom.

"Q. You did drink while you were operating farm machinery? A. A little.

"Q. Didn't you keep a bottle of liquor in there? A. Well, what of it. I suppose I did.

"Q. And it was customary for you to keep liquor all the time, wasn't it? A. No.

"Q. Now, you and your wife had trouble over this drinking, did you not? A. She objected to it. She didn't want me to touch it and—

"Q. You did have trouble over this drinking since your marriage? A. Not all the time.

"Q. Well, a good share of the time? A. Well, off and on, probably two, three or four times a year. On holidays.

"Q. You had sprees that would last for about two weeks? A. Whenever there wasn't much to do.

"Q. Is it not true, that you would be drunk and vomit around the house and she would have to clean up after you, is that not true? A. Oh yes, it could have happened, at the end of a celebration.

"Q. She did clean up after you? A. That didn't happen very often. Once or twice.

"Q. It happened on several occasions? A. Not many. A few times."

■ After plaintiff left defendant in May 1954, defendant wrote several letters to her wherein he asked her to return and made promises, which plaintiff did not believe would be kept because of similar promises on other occasions. We quote only a few excerpts from these letters. "It is terrible to try to out live, the wrong & abuse one has inflicted upon a dear one, thru liquor & greed for money". "As you say, Nellie, I never appreciated, what you did for me when I was tanked up". "I have made promises before and slipped up on them but this is final." "You said you would lose your health and mind if you stayed here, I wonder now why you didn't the way I treated you." "All you can think of is that red faced, bloated thing of the past." We cannot set forth the testimony in its entirety but most favorably examined, the evidence does not remotely suggest that defendant was only an occasional drinker. By his own testimony he kept liquor "In the house or barn, where ever I was working". He drank while operating the machinery, and went on sprees which would last two weeks. At least a few times he came home so drunk he vomited around the house for plaintiff to clean up. There is no denial of his arrest or that he was refused insurance covering the truck. To hold that the evidence in this case does not disclose that degree of intemperance from the use of intoxicating drinks which would reasonably inflict a course of great mental anguish upon plaintiff would not be reasonable or in keeping with the spirit and purpose of the statute. We are convinced that the great weight of the evidence is against the findings of the trial court on this issue. No greater personal indignity could be offered this wife by the husband, than the indignities to which she submitted due to the abuse of the use of liquor by the husband.

■ Respondent contends that a divorce should not be granted this wife because of certain alleged conduct on her part which even though not such as would entitle the husband to a divorce neverthless bars her from relief. We need not either affirm or deny the rule for which respondent

contends, sufficient to say is that in our opinion the record fails to disclose any misconduct on the part of the wife sufficient to form a basis for the denial of relief.

The judgment appealed from is reversed.

All the Judges concur.